37 P.3d 343 (2002)
109 Wash.App. 749
STATE of Washington, Respondent,
v.
Wuenceslao RAMIRES, Appellant.
No. 19127-3-III.
Court of Appeals of Washington, Division 3, Panel Eight.
January 8, 2002.
*346 Hugh M. Spall, Jr., Attorney at Law, Ellensburg, for Appellant.
Kenneth L. Ramm, Jr., Deputy Prosecuting Attorney, Yakima, for Respondent. *344

*345 OPINION PUBLISHED IN PART
BROWN, J.
Wuenceslao Ramires appeals his convictions for attempted first degree murder, taking a motor vehicle without permission, and two counts of unlawful possession of a firearm. We affirm, after considering and rejecting in the published portion of this opinion his contentions of error connected to the admission of excited utterances and photographic identification, and exceptional sentencing. In the unpublished portion of this opinion, we reject his pro se contentions related to evidence sufficiency, sentencing, and the failure to give an intoxication instruction.

FACTS
In the late evening of June 24, 1999, Yakima Police Officer Douglas Robinson made a routine traffic stop of a Pontiac automobile. With flashlight in hand, Officer Robinson approached the car. He could see two short people in the car, a female passenger with long hair, and a male driver.
Officer Robinson noted neither person looked at him as he approached the vehicle. He could not see either person's hands. As he reached the vehicle's rear wheel on the driver's side, the driver suddenly turned toward Officer Robinson and grinned. Sensing something was wrong, Officer Robinson stopped, but the driver immediately displayed a gun and shot him twice in the chest; both shots hit Officer Robinson's bulletproof vest near his heart.
As the vehicle raced away, Officer Robinson used his lapel microphone to call for help. Within seconds, Officer Scott Gylling arrived, followed soon by several other officers and paramedics. Officer Gylling followed *347 the ambulance that transported Officer Robinson to the hospital. While on a gurney and before reaching the hospital emergency room entrance, Officer Robinson used a cell phone to call his wife. After an initial examination, and while still in the emergency room, Officer Robinson described the events and suspects to Officer Gylling. Officer Gylling's report later became the center of an excited utterance controversy described later in this opinion.
The Pontiac was found crashed not far away from the shooting scene. Evidence was recovered from the car.
The next morning, Officer Benny Hensley saw Wuenceslao Ramires and Rosa Lopez walking in downtown Yakima. Officer Hensley noted they matched the description given by Officer Robinson and were acting suspiciously. During an investigative stop and protective weapon's search, a .22-caliber revolver was found hidden in the crotch of Mr. Ramires's pants. Two bus tickets to Fresno, California were found in Ms. Lopez's possession.
Detective David Cortez soon interviewed Mr. Ramires. Mr. Ramires admitted having given a false name when arrested, and indicated he was on his way to Mexico with his girlfriend. Mr. Ramires told Detective Cortez he had purchased some guns in Mattawa to use when stealing a car. Instead, he and Ms. Lopez found the unoccupied Pontiac in Mattawa and drove it to Yakima. Shortly after arriving in Yakima, Mr. Ramires was pulled over by Officer Robinson. Mr. Ramires admitted shooting the officer twice as the officer approached the car. Detective Cortez testified there was no indication that Mr. Ramires was under the influence at the time he gave his statement.
Later that morning, Officer Jesse Rangel visited Officer Robinson at the hospital and showed him a photographic montage. Officer Robinson already knew a suspect had been arrested. The montage included a photo of Mr. Ramires, taken the morning of his arrest. Officer Rangel told Officer Robinson the photomontage included the suspect. After reviewing the montage for a few minutes, Officer Robinson identified Mr. Ramires as the person who shot him. Officer Robinson indicated the person in photo number five had the same complexion, eyes, and dark shirt, as the person who shot him. Apparently, the other photographs showed persons wearing white t-shirts. Officer Robinson circled and initialed the number five photograph. The montage became the focus of a later trial court ruling regarding impermissible suggestiveness.
Mr. Ramires was charged with attempted first degree murder, taking a motor vehicle without permission, and two counts of second degree unlawful possession of a firearm. While awaiting trial, Mr. Ramires wrote several letters to Ms. Lopez, asking her to take the blame for the shooting because she would be charged as a minor and would receive a shorter sentence. However, Ms. Lopez's trial testimony mirrored Mr. Ramires's earlier confession.
Mr. Ramires's trial testimony differed dramatically from his earlier confession. He testified it was Ms. Lopez who shot Officer Robinson, and he had no knowledge she was carrying weapons at the time of the shooting. Mr. Ramires testified that the day after the shooting, when he and Ms. Lopez saw a police car driving by, Ms. Lopez became scared because she was still carrying the gun, so Mr. Ramires agreed to hide it in his pants. Mr. Ramires conceded his confession, but indicated he had initially taken the blame for the crime in order to protect Ms. Lopez.
The jury found Mr. Ramires guilty as charged. After finding aggravating factors discussed below, the trial court imposed an exceptional sentence on the attempted first degree murder conviction. Then, Mr. Ramires appealed.

ANALYSIS

A. Excited Utterance
The issue is whether the trial court erred by abusing its discretion when admitting as an excited utterance under ER 803(a)(2), Officer Robinson's hearsay description of the shooting events given to Officer Gylling in the hospital emergency room.
A trial court's decision to admit evidence is reviewed for an abuse of discretion. *348 State v. Williamson, 100 Wash.App. 248, 255, 996 P.2d 1097 (2000). An evidentiary decision may be an abuse of discretion if it is based upon facts that are not supported by the evidence. Id. However, a trial judge's findings, if supported by the evidence, will not be disturbed on appeal. Id.
The State concedes Officer Gylling's reiteration of Officer Robinson's description of the event was hearsay. ER 801(c). However, statements relating to a startling event or condition, made while the declarant was under the stress of excitement caused by the event or condition, are admissible as exceptions to the hearsay exclusion. ER 803(a)(2). The rule is based upon the premise that:
`under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control.' 6 J. Wigmore, Evidence § 1747, at 195 (1976). The utterance of a person in such a state is believed to be `a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock', rather than an expression based on reflection or self-interest.
State v. Chapin, 118 Wash.2d 681, 686, 826 P.2d 194 (1992) (quoting 6 J. Wigmore, Evidence § 1747, at 195 (1976)).
The trial judge must by a preponderance of the evidence make a preliminary finding that the declarant was still under the influence of the event at the time the statement was made. ER 104(a); Williamson, 100 Wash.App. at 257, 996 P.2d 1097. Whether a declarant makes statements while still under the stress of an event is a highly factual determination. State v. Sims, 77 Wash.App. 236, 238, 890 P.2d 521 (1995). A key focus is whether the statement is the result of fabrication, intervening actions, or the exercise of choice or judgment. State v. Brown, 127 Wash.2d 749, 759, 903 P.2d 459 (1995). Spontaneity is critical. Williamson, 100 Wash.App. at 258, 996 P.2d 1097. Evidence that the declarant has calmed down before making a statement tends to negate a finding of spontaneity. State v. Doe, 105 Wash.2d 889, 893-94, 719 P.2d 554 (1986).
An excited utterance may be made in response to questioning, but this tends to counter the element of spontaneity. Williamson, 100 Wash.App. at 258, 996 P.2d 1097; Chapin, 118 Wash.2d at 690, 826 P.2d 194. A declarant's ability to provide detailed information about the event also tends to show a calm, reflective state of mind. State v. Sellers, 39 Wash.App. 799, 804, 695 P.2d 1014 (1985); State v. Dixon, 37 Wash.App. 867, 874, 684 P.2d 725 (1984). The lapse of time between the startling event and the declaration is also a factor, although not as critical or dispositive. Williamson, 100 Wash.App. at 258, 996 P.2d 1097. The longer the time interval, the greater the need for proof that the declarant did not actually engage in reflective thought. Chapin, 118 Wash.2d at 688, 826 P.2d 194.
At a January 18, 2000 pretrial hearing, the State marked Officer Gylling's report of his contacts with Officer Robinson following the shooting as Exhibit A, and made an oral offer of proof regarding Officer Gylling's proposed testimony. The State offered that the time span was within an hour, hour and a half after the incident. Report of Proceedings (RP) (Jan. 18, 2000) at 7. The trial court admitted Exhibit A, which is not part of our record. The defense objected, mainly arguing that because Officer Robinson was available to testify directly, the hearsay would at best be cumulative, without probative value, and prejudicial; then the defense asked the court to err on the side of caution and simply permit Officer Robinson to testify to what he told people. RP (Jan. 18, 2000) at 7-8.
The trial court approved the offer under ER 803(a)(2) and other portions of the report that were present sense impressions under ER 803(a)(1). Regarding the excited utterance portion of Exhibit A, the court reasoned that although the report was not time specific it would accept the offer of proof that this information was taken a short time after Officer Gylling made contact and decided to rely upon Officer Gylling, when called, to particularize the time span. RP (Jan. 18, 2000) at 8.
At this juncture, the defense asked the court to note its exception so that it could proceed without an objection from the defense *349 in front of the jury that would require the jury to be excused. The court noted the exception.
At trial, Officer Gylling testified he was able to reach Officer Robinson within 10 seconds of his radio call for help. Officer Robinson appeared to be in pain. He was also pale and apparently in shock. Medics arrived and took Officer Robinson to the hospital with Officer Gylling following close behind. After arriving at the hospital before Officer Robinson was removed from the ambulance, Officer Gylling offered to call Officer Robinson's wife, but Officer Robinson placed the call himself using Officer Gylling's cell phone, apparently while being taken to the emergency room. While medical personnel tended to Officer Robinson, Officer Gylling waited outside approximately 10 minutes for Officer Robinson's wife. Approximately 15 to 20 minutes after first arriving at the hospital, Officer Gylling was able to talk to Officer Robinson about the shooting. This time frame was well within the State's pretrial offer of proof.
Then, over Mr. Ramires's single word hearsay objection, the court allowed Officer Gylling to recount what Officer Robinson told him. Under these circumstances, we conclude the trial court did not err when admitting Officer Gylling's account of Officer Robinson's declaration. The trial court appropriately cited State v. Guizzotti, 60 Wash. App. 289, 803 P.2d 808 (1991), for the proposition that the intervening circumstances must be considered. In Guizzotti, the statement was taken some seven hours after the startling event. The time line here is significantly less.
Moreover, any error would not violate Mr. Ramires's constitutional right to confrontation because Officer Robinson also testified at trial. State v. Palomo, 113 Wash.2d 789, 798, 783 P.2d 575 (1989). Reversal is not proper unless the error was prejudicial. State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997); State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981). Further, an error is not prejudicial unless within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. Tharp, 96 Wash.2d at 599, 637 P.2d 961. In assessing whether the error was harmless, the court should measure the admissible evidence of guilt against the prejudice, caused by the inadmissible testimony. Bourgeois, 133 Wash.2d at 403, 945 P.2d 1120.
Here, it is unlikely that any erroneously admitted hearsay statement materially affected the outcome of the trial. Instead, the hearsay statements were at most cumulative to Officer Robinson's trial testimony of the same nature. While the hearsay statement may have bolstered Officer Robinson's identification of Mr. Ramires as the shooter, his identification was consistent with Ms. Lopez's testimony and Mr. Ramires's confession. See Sellers, 39 Wash.App. at 805, 695 P.2d 1014 (A defendant's admissions are the most probative and damaging evidence.).

B. Photographic Identification
The issue is whether the trial court erred when admitting photographic montages used to identify Mr. Ramires by Officer Robinson.
Mr. Ramires first unsuccessfully objected on the grounds of hearsay and the trial court admitted the montages. After cross-examination of Officer Rangel revealed that Officer Robinson had been told the montage contained a photo of an arrested suspect, Mr. Ramires moved to strike the montage as unduly suggestive. Later, the issue of dissimilar clothing was raised as a basis for objection. On the last point the trial court agreed, but ultimately concluded, the identification was nonetheless reliable. While the State properly notes Mr. Ramires's objection and motion to strike were not brought in a pretrial hearing, we believe under the circumstances the objections were raised in time for the court to take corrective action, if necessary.
In any event, we review a trial court's findings of fact on a motion to suppress to determine whether they are supported by substantial evidence, and if so, whether the findings support the conclusions of law. State v. Chaussee, 72 Wash.App. 704, 708, 866 P.2d 643 (1994).
*350 An impermissibly suggestive photo lineup violates a defendant's due process rights when it creates an irreparable probability of misidentification. State v. Vickers, 107 Wash.App. 960, 967, 29 P.3d 752 (2001) (citing State v. Linares, 98 Wash.App. 397, 401, 989 P.2d 591 (1999), review denied, 140 Wash.2d 1027, 10 P.3d 406 (2000)); State v. Vaughn, 101 Wash.2d 604, 682 P.2d 878 (1984); State v. Weddel, 29 Wash.App. 461, 476-77, 629 P.2d 912 (1981). Review of this problem involves two steps. Linares, 98 Wash.App. at 401, 989 P.2d 591. First, the defendant must show the lineup was impermissibly suggestive. Id. If the defendant fails to meet this initial burden, the inquiry ends. Id. If the defendant meets this burden, then the court determines whether the photomontage identification contained sufficient indicia of reliability despite the suggestiveness. Id.
A defendant objecting to a photomontage as suggestive, must show that the montage directs undue attention to a particular photograph. State v. Eacret, 94 Wash. App. 282, 283, 971 P.2d 109 (1999). Generally, courts have found lineups or montages to be impermissibly suggestive solely when the defendant is the only possible choice given the witness's earlier description. See State v. Traweek, 43 Wash.App. 99, 103, 715 P.2d 1148 (1986), overruled on other grounds by State v. Blair, 117 Wash.2d 479, 816 P.2d 718 (1991) (robber described as blond; defendant was the only blond man in lineup); State v. Burrell, 28 Wash.App. 606, 611, 625 P.2d 726 (1981) (suspect described as having frizzy Afro hairstyle; defendant was the only subject in montage with that distinctive characteristic).
The court noted Officer Rangel's comment, that the montage contained a photograph of the suspect, was not in and of itself unduly suggestive. In essence, Office Rangel did not tell Officer Robinson anything he did not already know. See State v. Hilliard, 89 Wash.2d 430, 439, 573 P.2d 22 (1977) (since common sense dictated that the suspect would be in both the lineup and photographic display, the officer's comment to this effect added nothing, and in no way detracted from the objectivity of the identification procedure). Moreover, the record indicates Officer Robinson knew a suspect had been arrested before the montage was presented to him. We accept the trial court's determination that Mr. Ramires was the only person in the montage wearing a shirt earlier described by Officer Robinson and was unduly suggestive.
In considering the reliability of the identification, the court may consider: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Linares, 98 Wash.App. at 401, 989 P.2d 591. Reliability is a question of fact. Vickers, 107 Wash.App. at 967 n. 10, 29 P.3d 752; Vaughn, 101 Wash.2d at 610-11, 682 P.2d 878; Linares, 98 Wash.App. at 402, 989 P.2d 591.
In applying these factors, the trial court found Officer Robinson's photograph identification of Mr. Ramires was nonetheless reliable. Specifically, the court noted Officer Robinson had the opportunity to view the suspect as he approached the car and shined his flashlight at the driver's face. He became more alert as he approached the car. As a police officer, he was trained and experienced in making these observations. Officer Robinson's initial description was accurate enough to lead to Mr. Ramires's apprehension within 12 hours. And finally, Officer Robinson appeared certain of Mr. Ramires's identity when he was shown the montage at the hospital. Although Mr. Ramires disagrees with the trial court's characterization of the evidence, substantial evidence exists to support the finding that Officer Robinson's photograph identification of Mr. Ramires was reliable despite the montage's suggestiveness. Chaussee, 72 Wash.App. at 708, 866 P.2d 643. The trial court did not err.

C. Exceptional Sentence
Mr. Ramires was convicted of attempted first degree murder. His offender score was *351 two, and, with the firearm enhancement, his standard range was 255.75 to 320.25 months. The court found aggravating factors existed and imposed an exceptional sentence of 464.25 months or 12 years above the highest standard range sentence. The court found three factors justified the exceptional sentence: (1) Mr. Ramires knew his victim was a police officer; (2) Mr. Ramires waited until Officer Robinson was in a vulnerable position and then ambushed him; and (3) the trial court penned in that Mr. Ramires had shown no remorse for his actions.
A trial court's justifications for imposing a sentence outside the standard range must be substantial and compelling. Former RCW 9.94A.120(2) (2000). A defendant may challenge an exceptional sentence on the grounds that the facts relied upon to justify the sentence are not supported by the evidence, the legal justification is not supported by the law, or the sentence was clearly excessive in light of the circumstances. Former RCW 9.94A.210(4) (2000); State v. Barnett, 104 Wash.App. 191, 201, 16 P.3d 74 (2001). Review of the legal justification for an exceptional sentence is de novo; review of the factual findings is under the clearly erroneous standard. State v. Hooper, 100 Wash. App. 179, 183, 997 P.2d 936 (2000).
Mr. Ramires challenges the trial court's reliance upon his victim's status as a police officer to justify an exceptional sentence. A two-prong analysis is employed when reviewing the trial court's legal justifications for an exceptional sentence. State v. Ferguson, 142 Wash.2d 631, 649, 15 P.3d 1271 (2001). [F]irst, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range; and second, the asserted aggravating factor must be sufficiently substantial and compelling to distinguish the charged offense from others in the same category. Id.
Under the first prong, a trial court may not rely upon facts that would violate the real facts doctrine. Under this doctrine, a trial court may not consider facts constituting a more serious, but uncharged or unproven crime, to exceed the standard sentencing range. Former RCW 9.94A.370(2) (2000); State v. Wakefield, 130 Wash.2d 464, 475-76, 925 P.2d 183 (1996). Instead, the court may only consider information that is admitted by the plea agreement or admitted, acknowledged, or proved in a trial or at the time of sentencing. Former RCW 9.94A.370(2).
Mr. Ramires argues that consideration of his victim's status as a police officer violates the real facts doctrine because such facts constitute the crime of attempted aggravated first degree murder. This argument fails because no such crime exists. First, aggravated first degree murder is not a separate crime but rather a penalty enhancement. State v. Kron, 63 Wash.App. 688, 696-97, 821 P.2d 1248 (1992). It cannot, therefore, constitute a more serious uncharged or unproven crime under the real facts doctrine.
The second prong of the trial court's justification for imposing an exceptional sentence requires this court to consider whether the justification was sufficiently substantial and compelling. A defendant's knowledge that his victim is a police officer acting in his or her official duty is a legal basis for imposing an exceptional sentence. State v. Anderson, 72 Wash.App. 453, 466, 864 P.2d 1001 (1994). Mr. Ramires's attempt to distinguish Anderson by pointing out factual differences is unpersuasive.
Mr. Ramires also challenges the trial court's finding that his victim, Officer Robinson, was particularly vulnerable. Particular vulnerability of a victim justifies an exceptional sentence as a matter of law. Former RCW 9.94A.390(2)(b) (2000); State v. Scott, 72 Wash.App. 207, 866 P.2d 1258 (1993), aff'd sub nom. by State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995). Imposition of an exceptional sentence based upon particularized vulnerability requires that the victim be more vulnerable to the offense than other victims, and that the defendant knows of the vulnerability. State v. Bedker, 74 Wash.App. 87, 871 P.2d 673 (1994). The vulnerability must also be a substantial factor in accomplishing the crime. State v. Ross, 71 Wash.App. 556, 565, 861 P.2d 473, 883 P.2d 329 (1994). We review the trial court's finding of particularized vulnerability under the clearly erroneous standard to determine if *352 the record supports it. State v. Cardenas, 129 Wash.2d 1, 5, 914 P.2d 57 (1996).
The trial court found that Officer Robinson was particularly vulnerable because he was approaching Mr. Ramires during a routine traffic stop, and Mr. Ramires waited until the officer was in a vulnerable position before ambushing him. However, here the officer was not attacked by surprise, by a person lying in wait. Instead, this officer was very aware of the risks involved in traffic stop situations. No evidence exists showing Mr. Ramires planned to trap Officer Robinson in advance. Officer Robinson was in a vulnerable position merely as a result of his duties as a police officer. His status as a police officer should not twice be used to justify an exceptional sentence.
As noted, the dangers associated with traffic stops are well known to police officers. Officer Robinson was trained to be alert and protect himself from the possibility of a violent driver. He was wearing protective gear, and armed with a gun and a radio. The record does not support the trial court's finding that Officer Robinson was particularly vulnerable under these circumstances.
Finally, Mr. Ramires challenges the trial court's finding that his lack of remorse justified an exceptional sentence. Lack of remorse is also a legally justified reason for imposing an exceptional sentence. State v. Burkins, 94 Wash.App. 677, 698, 973 P.2d 15, review denied, 138 Wash.2d 1014, 989 P.2d 1142 (1999); Ross, 71 Wash.App. at 563, 861 P.2d 473. The lack of remorse must be of an aggravated or egregious nature. Burkins, 94 Wash.App. at 698, 973 P.2d 15. It does not mean the mundane lack of remorse found in run-of-the-mill criminals. State v. Wood, 57 Wash.App. 792, 800, 790 P.2d 220 (1990). Refusing to admit guilt or remaining silent is an exercise of one's rights, not an indication of lack of remorse. State v. Russell, 69 Wash.App. 237, 251, 848 P.2d 743 (1993). The sufficient quantity or quality of remorse depends on the facts of a case. Ross, 71 Wash.App. at 563, 861 P.2d 473 (citing Wood, 57 Wash.App. at 800, 790 P.2d 220).
Here, the trial court relied primarily upon Mr. Ramires's lack of contrition and attempt to shift blame to his minor girlfriend. In Ross, the court looked to the defendant's blame of the justice system for his crimes and refusal to accept responsibility for his actions. Ross, 71 Wash.App. at 563. In State v. Reynolds, 80 Wash.App. 851, 859, 912 P.2d 494 (1996), lack of remorse was sufficiently shown by the defendant's bragging. Lack of remorse has also been upheld when the defendant shows continuing contempt for the victim and tells police he was glad the victim was dead. Burkins, 94 Wash.App. at 698, 973 P.2d 15.
Although Mr. Ramires did not apologize, show remorse, or accept responsibility for his actions, it is consistent with his failed defense and right to maintain his innocence. While a failed defense may at times be used to justify a mitigated exceptional sentence, the State points to no case, and we can find none supporting the proposition that a failed defense may serve as the basis for an aggravated exceptional sentence. To follow such a course may serve to chill a defendant's right to present a defense in the first place and maintain innocence throughout the criminal process, including appeal. On the whole, we conclude the trial court's reliance upon lack of remorse was not supported by this record and was erroneous.
However, because we have concluded the trial court was justified in one of the three reasons given for the exceptional sentence, the remaining question is whether remand for resentencing is necessary. The court did not indicate specifically that any one of the three factors standing alone would justify the court's imposition of an exceptional sentence. However, our review of this record reveals the trial court's intent to impose the same sentence if considering solely the valid reason. State v. Sweet, 138 Wash.2d 466, 484, 980 P.2d 1223 (1999); State v. Harding, 62 Wash.App. 245, 250, 813 P.2d 1259 (1991). This is particularly clear in light of the trial court's sua sponte addition of the lack of remorse factor, and its recognition of the close connection between the victim's status as a police officer and the inherent vulnerability of a police officer while performing *353 duties of the kind presented here. Consequently, remand for resentencing is unnecessary.
Affirmed.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
KURTZ, C.J., and SWEENEY, J., concur.