FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 NOV 13 AM 8: 48



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>           Respondent,<br><br>v.<br><br>RAUL CORTES-MENDEZ,<br><br>           Appellant. | No. 76572-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 13, 2018 |

LEACH, J. — Raul Cortes-Mendez appeals his conviction for attempting to elude a pursuing police vehicle. He claims that his trial counsel provided ineffective representation by failing to object to an officer's out-of-court and later in-court identifications. Because he does not show that the trial court would likely have granted a request to suppress this evidence, his claim fails. We affirm.

## BACKGROUND

Officer Nathan Lemberg has worked for the Seattle Police Department (SPD) for more than eight years. On the evening of February 16, 2016, he was "proactively policing" the Aurora corridor in a marked police vehicle. He pulled into the Jack in the Box parking lot on the northeast corner of North 85th and Aurora. As he drove into the lot from the east, toward a set of parking places along the facing wall of the Jack in the Box, he noticed a man standing next to a

Ford Taurus, looking at the person in the passenger's seat. This man walked away after spotting Lemberg's car. One concern for police along the Aurora corridor is illegal drug activity. Lemberg thought he might have interrupted a drug transaction. But without more information, he did not believe that he had sufficient cause to detain anyone.

Although the interior of the Taurus was dark, Lemberg could see a man in the driver's seat and a woman in the passenger's seat. He drove toward the Taurus, nearly perpendicularly, with the intent of seeing its license plate number. He initially could not see into the Taurus clearly but as he approached within five to seven feet, his headlights lighted its interior. Lemberg made eye contact with the driver and got "a very good look at the occupants." He testified during trial a year later that he noticed the driver's eyes were brown.

After observing the occupants, Lemberg turned his car so he could back into the space next to the Taurus. Lemberg did not describe the suspect to dispatch, take notes of his observations, or turn his video camera to face the occupants of the car. Instead, he immediately conducted a computer search based on the license number he observed. The search revealed that the Taurus had been sold but title had not been transferred. Failure to transfer title within 45 days of sale is a crime.[1] Lemberg also noticed that the Taurus did not have a temporary trip permit that would excuse the failure to register. While the police

_____

[1] RCW 46.12.650(7).

-2-

vehicle and the Taurus were still parked next to each other, the driver of the Taurus was illuminated by the ambient light in the parking lot.

About 30 seconds after Lemberg parked, while the results were still coming in on the license search, the driver of the Taurus pulled out of his parking space. Lemberg did not get a closer look at the driver as the Taurus was pulling out. He followed the Taurus for about ten blocks. When the license plate search returned the information about the failure to transfer title, he decided to stop the Taurus. He was directly behind it and turned on his overhead lights. The Taurus slowed to let the car in front of it turn right. Immediately afterward, it changed lanes, accelerated, and drove through a red light at the intersection of Third Avenue NW and NW 85th Street. The Taurus then continued quickly west on NW 85th Street.

Lemberg turned on his siren and followed the Taurus through the red light but decided to end his pursuit out of concern for the danger to the public at large.[2] He pulled over and learned from the dispatcher that Cortes-Mendez had purchased the vehicle. Within 15 minutes of ending pursuit, Lemberg searched Cortes-Mendez's name and retrieved a booking photograph that matched his memory of the driver. He wrote a report that evening but did not include a detailed description of his observations before the records search as he had identified Cortes-Mendez based upon the booking photograph.

---

[2] This is SPD policy. Officers terminate pursuit when threats to public safety of a chase outweigh the magnitude of the offense for which the pursuit is enacted.

At trial, the defense asked the court to exclude any reference to the booking photograph. The State agreed not to offer the booking photograph and offered instead a state-issued identification card. Cortes-Mendez objected, initially on the basis of hearsay and later on the basis of relevancy because the officer did not view the identification card to determine the identity of the driver. The court allowed the State to ask the officer how he located the photograph without identifying its source. The court also admitted the identification card as a business record but pointed out that counsel could question Lemberg about his use, if any, of the card to identify Cortes-Mendez.

During trial, Lemberg identified Cortes-Mendez as the driver. He testified that on the night in question, he viewed a photograph of the purchaser of the vehicle and it matched the man he saw driving the Taurus and the defendant. He did not describe the photograph he viewed as a booking photograph. He also identified the person in the identification card photograph as the driver but stated that he did not use the card for his initial out-of-court identification. The jury found Cortes-Mendez guilty of attempting to elude a pursing police vehicle. He appeals.

## ANALYSIS

We review claims of ineffective assistance of counsel de novo.[3] To succeed on a claim of ineffective assistance of counsel, the appellant must

---

[3] State v. Feely, 192 Wn. App. 751, 768, 368 P.3d 514, review denied, 185 Wn.2d 1042 (2016).

establish that the trial attorneys performed below an objective standard of reasonableness and that this failure resulted in prejudice.[4] This court starts with a strong presumption that trial counsel provided effective representation.[5] The appellant may rebut this presumption only with a clear showing of incompetence.[6]

Cortes-Mendez does not meet his burden. He does not show that the in-court and out-of-court identification evidence gave rise to a substantial likelihood of irreparable misidentification. So he cannot show that the trial court likely would have granted a request to suppress this identification evidence. As a result, his ineffective assistance claim also fails.

Identification Evidence

Cortes-Mendez claims that Lemberg's out-of-court identification procedure violated his right to due process and the trial court should have suppressed any evidence arising from it. But he does not show that Lemberg's identification of him gave rise to a substantial likelihood of irreparable misidentification.

An out-of-court identification that is "'so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification'" violates due process.[7] To establish a due process violation, a defendant first must establish

---

[4] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[5] State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d. 1251 (1995).

[6] State v. Varga, 151 Wn.2d 179, 199, 86 P.3d 139 (2004).

[7] State v. Vickers, 148 Wn.2d 91, 118, 59 P.3d 58 (2002) (quoting State v. Linares, 98 Wn. App. 397, 401, 989 P.2d 591 (1999)).

that the identification procedure was impermissively suggestive.[8] Single photograph identification procedures can raise due process concerns.[9] If a defendant shows an identification was impermissively suggestive, then he also must show this procedure created a "substantial likelihood of irreparable misidentification."[10] Because Cortes-Mendez fails to show that Lemberg's identifications met this second prong, we need not evaluate the first prong of the analysis.

Courts measure the likelihood of irreparable misidentification by looking at the totality of the circumstances to see if the identification demonstrated "sufficient aspects of reliability."[11] Reliability "is the linchpin in determining the admissibility of identification testimony."[12]

In Manson v. Brathwaite,[13] the United States Supreme Court considered the admissibility of an out-of-court single-photograph identification by a law enforcement officer of an individual he encountered earlier. The State conceded that the officer's single photograph identification of Brathwaite was impermissibly suggestive. The Court did not find this concession dispositive of the due process issue. Instead, the Court evaluated the totality of the circumstances to determine

---

[8] State v. Kinard, 109 Wn. App. 428, 433, 36 P.3d 573 (2001).

[9] Linares, 98 Wn. App. at 403; Simmons v. United States, 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

[10] Vickers, 148 Wn.2d at 118.

[11] Manson v. Brathwaite, 432 U.S. 98, 106, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

[12] Brathwaite, 432 U.S. at 114.

[13] 432 U.S. 98, 101, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

whether the identification was reliable.[14] Because the Court found that the identification was reliable, it did not give rise to a substantial likelihood of irreparable misidentification.[15] The due process claim failed.

The Brathwaite Court evaluated these factors to determine reliability: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."[16] Against these factors, a court must weigh the corrupting effect of the suggestive identification itself.[17] Aspects indicative of the corruption of a suggestive identification include "urgency [and] coercive pressure to make an identification arising from the presence of another."[18] In contrast, "circumstances allowing [for] care and reflection" and the chance to examine the photograph at one's "leisure" reduce the suggestive impact of the procedure.[19]

Our review of the totality of the circumstances, using all but one of the factors examined by the Brathwaite Court, shows that Lemberg's identification was reliable and not substantially likely to result in irreparable misidentification. Lemberg did not take notes or describe the suspect to dispatch before receiving information connecting Cortes-Mendez to the car. So we cannot compare the

---

[14] Brathwaite, 432 U.S. at 114-16 (using the factors identified in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), to determine reliability).

[15] Brathwaite, 432 U.S. at 116.

[16] Brathwaite, 432 U.S. at 114.

[17] Brathwaite, 432 U.S. at 114.

[18] Brathwaite, 432 U.S. at 116.

[19] Brathwaite, 432 U.S. at 116.

"accuracy of the description" made by Lemberg after the initial encounter to the booking photograph.[20] We must exclude this factor from our analysis. The remaining factors weigh in favor of the identification's reliability.

Lemberg had a moderate opportunity to view the driver in the parking lot. He encountered the Taurus at night with transient light. At one point, he saw the suspect illuminated by his headlights from about five to seven feet away. He made eye contact with the driver and spent another 20 to 30 seconds parked next to the car, in view of the driver, before the Taurus pulled away. While less favorable than in Brathwaite, where the encounter was in late daylight,[21] the conditions here were more favorable than in State v. Ramires.[22] There, the court found reliable the officer's identification of the defendant based on viewing a suspect at night through a window from a position near the rear tire on the driver's side of the car.[23]

Lemberg's degree of attention when making the identification weighs heavily in favor of reliability. A trained officer on duty brings a particularly high degree of attention to making observations of potential suspects.[24] Lemberg was on duty when he encountered the suspect. He was a trained police officer with more than eight years of experience.[25] He was also suspicious of the activity in

---

[20] Brathwaite, 432 U.S. at 115 (listing factor three as "the accuracy of the description" made by the witness after the encounter).

[21] Brathwaite, 432 U.S. at 114.

[22] 109 Wn. App. 749, 754-57, 762-63, 37 P.3d 343 (2002).

[23] Ramires, 109 Wn. App. at 754.

[24] Brathwaite, 432 U.S. at 115.

[25] See Brathwaite, 432 U.S. at 115 (indicating that police officers' training raises their attentiveness as witnesses).

and around the Taurus. An officer's heightened suspicion supports increased attention to detail. [26] Officer Lemberg displayed a high level of certainty, stating that he obtained a "very good look" at the suspect and that he recognized Cortes-Mendez as the driver when he viewed the booking photograph. He also displayed confidence during his in-court identification.

The very short time between when Lemberg encountered the suspect and when he identified Cortes-Mendez from the booking photograph supports reliability. Courts have considered elapsed times of one and two days to be reliable.[27] Here, only about 30 minutes to an hour elapsed. Lemberg was in the parking lot adjacent to the Taurus for 20 to 30 seconds. He then pursued the Taurus for about 13 blocks. Fifteen minutes after ending pursuit, he found the photograph.

The identification was also not affected by any corrupting influences that would make it unreliable. Because Lemberg ended the chase, he was in no rush to complete the identification. He was not feeling coerced by other officers since he was alone when he identified Cortes-Mendez in the booking photograph. Lemberg behaved the way a trained officer should in this situation. Rather than attempting to bolster a predetermined conclusion, he searched for the correct answer by conducting a systematic investigation of a suspicious circumstance.

---

[26] See Ramires, 109 Wn. App. at 762 (discussing the impact of suspicion on heightened attention to detail).

[27] See, e.g., Brathwaite, 432 U.S. at 115-16; Ramires, 109 Wn. App. at 762.

Because Lemberg's identification of Cortes-Mendez based on the booking photograph and his memory of the encounter is reliable, it did not risk a substantial likelihood of irreparable misidentification and therefore did not violate due process. So Cortes-Mendez fails to establish that the trial court would have been likely to grant a motion to suppress evidence flowing from this initial out-of-court identification.

Assistance of Counsel

A criminal defendant has a constitutional right to effective assistance of counsel.[28] The burden is on the convicted defendant to "show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'the deficient performance prejudiced the defense.'"[29] An appellant must prove both prongs to establish ineffective assistance.[30]

Cortes-Mendez asserts he suffered ineffective assistance of counsel at trial because his attorneys did not move to suppress Lemberg's out-of-court and in-court identification. However, since he fails to show that the trial court would likely have granted a motion to suppress, Cortes-Mendez also fails to establish that his attorneys' performance prejudiced him.

If an appellant fails to establish either prong of an ineffective assistance of counsel claim, that claim fails. So Cortes-Mendez's claim fails.

---

[28] In re Pers. Restraint of Khan, 184 Wn.2d 679, 688, 363 P.3d 577 (2015).

[29] In re Pers. Restraint of Yates, 177 Wn.2d 1, 35, 296 P.3d 872 (2013) (quoting Strickland, 466 U.S. at 687-88); Khan, 184 Wn.2d at 688; McFarland, 127 Wn.2d at 334-35.

[30] Feely, 192 Wn. App. at 769.

CONCLUSION

We find that Cortes-Mendez failed to demonstrate ineffective assistance of counsel. He failed to show that a court would likely have granted a motion to suppress the out-of-court and in-court identification evidence because he did not establish that the identification procedure violated his due process right. We affirm.

WE CONCUR: