# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58373-9-II |
| Respondent, | |
| v. | ORDER GRANTING MOTION |
| TERRY LEE KEENE, | TO CORRECT OPINION |
| Appellant. | |

Appellant filed a motion to correct two statements in this court's opinion filed February 19, 2025. Following consideration, we grant the Appellant's motion and correct the opinion in part as follows:

On page one, the first sentence now reads, "Terry Keene appeals his convictions of second degree child rape, two counts of third degree child rape, third degree child molestation, and his standard range sentence."

On page one, in footnote one, the sentence now reads, "Keene does not appeal his additional convictions of eluding a police officer and resisting arrest."

We do not amend any other portion of this opinion or the result.  Accordingly, it is

SO ORDERED.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
PRICE, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58373-9-II |
| Respondent, | |
| v. | |
| TERRY LEE KEENE, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Terry Keene appeals his conviction of second degree child rape and his standard range sentence.[1] Keene also makes multiple claims in a statement of additional grounds (SAG) that affect his additional convictions of two counts of third degree rape of a child, one count of third degree child molestation, eluding a police officer, and resisting arrest.

Keene argues that (1) the State's evidence was insufficient to prove that the victim was under the age of 14 when the rape occurred as required by the second degree rape statute; (2) the trial court erred in giving a no corroboration jury instruction, which stated that the victim's testimony alone can be sufficient to convict a defendant; (3) the trial court erred in sentencing him to a sentence at the high end of the standard range based on the fact that he maintained his

---

[1] Keene does not appeal his additional convictions of two counts of third degree child rape, third degree child molestation, eluding a police officer, and resisting arrest.

innocence; and (4) the $500 crime victim penalty assessment (VPA) and community supervision fees should be stricken from the judgment and sentence.

We hold that (1) sufficient evidence supports Keene's conviction for second degree rape of a child; (2) the trial court did not err in giving the no corroboration instruction under the Supreme Court's opinion in *State v. Clayton*, 32 Wn.2d 571, 202 P.2d 922 (1949); (3) the trial court did not abuse its discretion when it imposed a standard range sentence; (4) Keene's assertions in his SAG either are not addressable on direct appeal, too vague to address, or meritless; and (5) as the State concedes, the VPA and community supervision fees must be stricken from the judgment and sentence.

Accordingly, we affirm Keene's convictions, but we remand for the trial court to strike the VPA and community supervision fees.

FACTS

In 2019, CW's mother reported to police that he had disclosed to her that Keene had sexually touched him when he spent the night at Keene's house as a child. The State charged Keene with second degree child rape, two counts of third degree child rape, and third degree child molestation. The State also charged Keene with attempting to elude a pursuing police vehicle and resisting arrest based on law enforcement's attempt to detain him.

*Trial*

At trial, CW testified that he met Keene when he was around 12 or 13 years old. CW and his family started spending time with Keene. CW stated that he was around 13 or 14 years old when his parents allowed him to spend the night at Keene's house. CW testified that Keene began to rape him at "[r]oughly 13 or 14 years old." Rep. of Proc. (RP) at 694. CW testified that he was scared and "you can imagine being 13 years old or whatever." RP at 695.

4

CW then gave the following testimony:

Q: When he was putting his penis into your anus, were you 13 at that time, or 14, or something different?

A: Definitely 13. It's, like I said, it's really hard to remember the exact age I was, but it'd definitely be 13 or 14.
. . .

Q: Okay. Do you remember what grade you were in when the Defendant started having anal sex with you?

A. I'd like to say sixth grade.

RP at 706-07.

CW was born in June 2004. CW's mother testified that CW completed eighth grade in 2018. The doctor who performed a sexual assault medical examination on CW testified that CW stated that the sexual abuse began when he was "about 13 years old." RP at 568.

Keene testified at length in his defense. He denied ever having sex or sexual contact with CW.

Over Keene's objection, the trial court gave a no corroboration instructed that stated,

In order to convict a person of the crime of Rape of a Child in the Second Degree, Rape of a Child in the Third Degree, or Child Molestation in the Third Degree as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated.

Clerk's Papers (CP) at 76.

The jury convicted Keene on all counts.

*Sentencing*

At sentencing, defense counsel stated that Keene maintained his innocence. In his statement to the court, Keene said, "[T]his shouldn't have been the grand jury. This should have been strucken [sic] down first by – never with the State in the first place. . . . [T]here's so many

things that the parties don't know that I will bring to light. And I think it's going to be thrown out pretty quickly once I get it switched over." RP at 1025.

The trial court acknowledged that the standard range sentence for second degree child rape based on Keene's offender score was 210 to 280 months. The court began by noting that "the jury listened to the testimony of all the witnesses and ultimately determined that the alleged victim in the case was credible. . . . [H]aving heard all that evidence, the jury decided that there was sufficient evidence that the defendant was guilty beyond a reasonable doubt." RP at 1027.

The trial court then stated,

I agree with [the prosecutor's] observations that the evidence reflects this was a long-term relationship or long-term, I guess I should say, pattern of abuse by the Defendant against a much younger victim in this particular matter. I agree with [the prosecutor's] observation that it was not only sexual abuse, but there are aspects of psychological abuse occurring inflicted on the victim by the defendant here.

RP at 1027.

The trial court then noted that Keene had not accepted responsibility or expressed any remorse. The court stated,

I do take into account the length of the abuse and the lack of remorse, you know, the lack of any sort of empathy or sympathy for the victim in this particular matter. The Department of Corrections has recommended 280 months.
. . .
But this is, you know, a series of egregious crimes and the Defendant, you know, continues to assert his innocence, will not accept any responsibility, or express any remorse. Those are key factors, that I think the Court looks at in terms of determining an appropriate sentence and the failure to – of the Defendant to express any sort of remorse in this case or accept responsibility for his acts certainly mitigates towards a high-end sentence.

RP at 1028.

The trial court sentenced Keene to 280 months and ordered Keene to pay a $500 VPA. The court found Keene indigent under RCW 10.01.010(3)(a). In the misdemeanor judgment and

6

sentence for the resisting arrest conviction, the court required Keene to pay monthly community supervision fees.

Keene appeals his second degree rape conviction and his sentence for all of his convictions.

## ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Keene argues that the State's evidence was insufficient to prove that CW was less than 14 years old when the rapes occurred, which was required to convict Keene of second degree child rape. We disagree.

#### 1. Legal Principles

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). We resolve all reasonable inferences based on the evidence in favor of the State and interpret inferences most strongly against the defendant. *Id.* And circumstantial and direct evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017)

RCW 9A.44.076(1) states, "A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim." Although the lower age limit is not an essential element of the crime the prosecution must prove, the State does not dispute that the upper age limit is an essential element. *See State v. Goss*, 186 Wn.2d 372, 381-82, 378 P.3d 154 (2016) (stating that "[t]he lower age limit (unlike the highest)" is not an essential element of the crime of second degree child molestation).

7

2.    Analysis

CW testified that the rapes started when (1) he was "[r]oughly 13 or 14,"RP at 694; (2) he was "[d]efinitely 13," although he then said "definitely be 13 or 14," RP at 706; and (3) he was in "I'd like to say sixth grade," RP at 707.  He also referred to his 13-year-old self being scared.  CW's mother testified that CW was born in June 2004 and he completed eighth grade in 2018, which means that CW had just turned 12 when he finished sixth grade.  Finally, the physician who provided the sexual assault medical examination stated that CW said that the rapes occurred when he was "about 13."  RP at 568.

Keene argues that these statements show some equivocation between ages 13 and 14.  But the evidence must be viewed in the light most favorable to the State.  *Scanlan*, 193 Wn.2d at 770.  Viewed in that light, any rational trier of fact could have found beyond a reasonable doubt that CW was less than 14 years old when the rapes started.

Accordingly, we hold that the State presented sufficient evidence to support Keene's conviction for second degree rape of a child.

B.    NO CORROBORATION JURY INSTRUCTION

Keene argues that the trial court unconstitutionally commented on the evidence in violation of article IV, section 16 of the Washington Constitution by giving a no corroboration instruction.  Based on Supreme Court precedent, we disagree.

In *Clayton*, the Supreme Court held that a no corroboration instruction was not a comment on the evidence because under the law, "in cases of [child sex crimes], a defendant *may* be convicted upon such testimony alone, provided the jury should believe from the evidence, and should be satisfied beyond a reasonable doubt, that the defendant was guilty of the crime

charged." 32 Wn.2d at 574. Accordingly, an instruction that a victim's testimony alone is sufficient to convict a defendant was a correct statement of law. *See Id.*

Numerous Court of Appeals opinions have upheld the use of a no corroboration instruction based on the holding in *Clayton*, while expressing concern about the propriety of such an instruction. *See, e.g.*, *State v. Rohleder*, 31 Wn. App. 2d 492, 500-01, 550 P.3d 1032, *review denied*, 3 Wn.3d 1029 (2024); *State v. Kovalenko*, 30 Wn. App. 2d 729, 746, 546 P.3d 514, *review denied*, 3 Wn.3d 1036 (2024); *State v. Zimmerman*, 130 Wn. App. 170, 182-83, 121 P.3d 1216 (2005). The two most recent cases emphasize that the better practice is not to give a no corroboration instruction. *Rohleder*, 31 Wn. App. 2d at 501; *Kovalenko*, 30 Wn. App. 2d at 746. And the Washington Supreme Court Committee on Jury Instructions recommends against using the instruction:

> The matter of corroboration is really a matter of sufficiency of the evidence. An instruction on this subject would be a negative instruction. The proving or disproving of such a charge is a factual problem, not a legal problem. Whether a jury can or should accept the uncorroborated testimony of the prosecuting witness or the uncorroborated testimony of the defendant is best left to argument of counsel.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 45.02 cmt., at 1004 (5th ed. 2021).

But we are bound to follow *Clayton* as long as it remains good law. And the Supreme Court denied review in both *Rohleder* and *Kovalenko*. Accordingly, we hold that the trial court did not err in giving the no corroboration jury instruction.

C.    SENTENCING FACTORS

Keene argues that the trial court erred by sentencing Keene to the high end of the standard range based on the exercise of his constitutional rights to testify in his own defense and to maintain his innocence. We disagree.

### 1.    Appeal of Standard Range Sentence

The general rule is that a sentence within the standard sentence range for an offense cannot be appealed.  RCW 9.94A.585(1); *State v. Glant*, 13 Wn. App. 2d 356, 376, 465 P.3d 382 (2020).  "The rationale is that a trial court that imposes a sentence within the range set by the legislature cannot abuse its discretion as to the length of the sentence as a matter of law." *Glant*, 13 Wn. App. 2d at 376.  However, this rule does not apply to the procedure by which a standard range sentence is imposed.  *In re Pers. Restraint of Marshall*, 10 Wn. App. 2d 626, 635, 455 P.3d 1163 (2019).  Therefore, a party may " 'challenge the underlying legal conclusions and determinations by which a court comes to apply a particular sentencing provision.' " *State v. Delbosque*, 195 Wn.2d 106, 126, 456 P.3d 806 (2020) (quoting *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003)).

Relevant here, RCW 9.94A.585(1) does not bar appellate review of a trial court's constitutional error during sentencing.  *State v. Osman*, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006); *State v. Sandefer*, 79 Wn. App. 178, 181, 900 P.2d 1132 (1995).  Therefore, Keene can challenge that his sentence violated his constitutional rights despite the general rule of RCW 9.94A.585(1).

### 2.    Legal Principles

Criminal defendants have a constitutional right to testify on their own behalf.  Wash. Const. art. 1, § 22.  Criminal defendants also have a constitutional right to remain silent at sentencing.  *In Re Det of Post*, 145 Wn. App. 728, 758, 187 P.3d 803 (2008).  However, no Washington case has addressed whether a trial court can impose a higher standard range sentence following a guilty verdict based on a defendant's testimony at trial and statement at sentencing that he was innocent.

Keene cites to *State v. Garibay*, 67 Wn. App. 773, 782, 841 P.2d 49 (1992), *abrogated on other grounds by State v. Moen*, 129 Wn.2d 535, 919 P.2d 69 (1996), and *State v. Ramires*, 109 Wn. App. 749, 37 P.3d 343 (2002), for the proposition that a trial court cannot use a defendant's denial of guilt as the basis for a heightened sentence.[2]

In *Garibay*, the trial court imposed an exceptional sentence in part because the defendant failed to express remorse to the officer who prepared the presentence report. 67 Wn. App. at 781. The court stated, "Mr. Garibay has a constitutional right to remain silent, and the sentencing court's use of silence to show 'lack of remorse' as an aggravating factor violates that right; it is tantamount to requiring him to admit he is guilty of the crime charged. Trial courts may not use a defendant's silence or continued denial of guilt as a basis for justifying an exceptional sentence." *Id.* at 782.

In *Ramires*, the trial court imposed an exceptional sentence in part because of the defendant's lack of remorse. 109 Wn. App. at 765. The court stated that although the defendant did not show remorse or take responsibility for his actions, that position was consistent with his failed defense and the right to maintain his innocence. *Id.* at 766. The court found nothing "supporting the proposition that a failed defense may serve as the basis for an aggravated exceptional sentence." *Id.*

Both cases are distinguishable because they involved the imposition of an exceptional sentence, not a standard range sentence. In addition, *Garibay*, and those cases that cite to it, improperly blur the distinction between a defendant who remains silent at sentencing and a

---

[2] Keene also cites *State v. Delarosa-Flores*, 59 Wn. App. 514, 799 P.2d 736 (1990). In that case, the defendant argued that the court's finding of lack of remorse to support an exceptional sentence was based on his professed innocence. *Id.* at 519. But the court found error only because the State offered no evidence in support of a lack of remorse. *Id.*

defendant who makes a statement of innocence at sentencing despite the preceding guilty verdict.[3]

We agree that a trial court cannot base its sentence on the defendant's right to remain silent, which is what occurred in *Garibay*. But depending on the circumstances, the trial court may be able to base its sentence on the defendant's affirmative statement of innocence in the face of a guilty verdict. *See People v. Ward*, 113 Ill. 2d 516, 527-32, 499 N.E. 2d 422 (1986) (recognizing that a defendant must not be penalized for the exercise of their rights, including the right to say nothing at sentencing, but when they chose to speak, a trial court may "incorporate the legitimate inferences drawn from [assertions of innocence], including whether the assertion was truthful, into the balance in considering the relevant factors bearing on the defendant's character and potential for rehabilitation.").

Keene also cites to two cases from other jurisdictions that vacated standard range sentences based on the defendant's failure to admit responsibility when imposing a standard range sentence: *Macan v. State*, 179 So. 3d 551 (Fl. Dist. Ct. App. 2015), and *State v. Shreves*, 313 Mont. 252, 60 P.3d 991 (2002). But in *Macon*, it is unclear whether defendant exercised her right to remain silent at sentencing. 179 So. 2d at 552-553. And in *Shreves*, the defendant made no statement at sentencing. 313 Mont. at 255.

3. Analysis

"We will not reverse a sentencing court's decision unless we find a clear abuse of discretion or misapplication of the law." *State v. Carter*, 3 Wn.3d 198, 212, 548 P.3d 935

---

[3] *See, e.g.*, *State v. Strauss*, 93 Wn. App. 691, 698-99, 969 P.2d 529 (1999) (citing *Garibay* for the suggestion that a defendant's silence is the equivalent of "denials of guilt"); *State v. Russell*, 69 Wn. App. 237, 251, 848 P.2d 743 (1993) (same).

(2024). RCW 9.94A.530(1) states, "The court may impose any sentence within the [standard] range that it deems appropriate." Trial courts have "largely unfettered" discretion when imposing a standard range sentence. *See State v. Mail*, 121 Wn.2d 707, 710, 854 P.2d 1042 (1993).

We conclude that the trial court did not abuse its discretion in imposing a standard range sentence. Three factors support our conclusion.

First, although Keene claimed innocence at trial, the jury rejected that claim. By the time of sentencing, the jury had found beyond a reasonable doubt that Keene had committed several offenses. The court specifically referenced this fact when discussing sentencing. The trial court was entitled to take the jury verdict into consideration when noting Keene's failure to take responsibility or show remorse.

Second, the failure to take responsibility was not the only basis for the trial court's sentence. The court first emphasized that the evidence reflected a long term pattern of abuse against a young victim. The court expressly considered the length of the abuse. And the court noted that the case involved both psychological and sexual abuse. Finally, the court recognized that Keene had been convicted of "a series of egregious crimes." RP at 1028. All of these factors easily supported a sentence at the top of the standard range.

Third, the trial court imposed a standard range sentence, not an exceptional sentence. Therefore, the cases precluding a trial court from considering the defendant's failure to take responsibility when imposing an exceptional sentence are inapplicable. As noted above, standard range sentences generally are not appealable. RCW 9.94A.585(1). We are hesitant to second-guess a trial court's discretionary sentencing decision in the absence of some clearly improper basis for imposing a standard range sentence.

We hold that the trial court did not abuse its discretion in sentencing Keene.

D.    SAG CLAIMS

Keene makes numerous claims in his SAG.[4]  We conclude that Keene's claims are either not addressable or without merit.

1.    Matters Outside the Record

Keene argues that (1) his defense counsel provided ineffective assistance of counsel because he did not follow Keene's preferred strategy, elicit certain facts at trial, and call certain witnesses, and because he requested a competency hearing; (2) the State's witnesses lied on the stand during their testimony; and (3) medical providers at Western State Hospital ignored his health history and used excessive force against him.

But these assertions rely entirely on matters outside the record.  As a result, we cannot consider them on direct appeal.  *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).  These assertions are more properly raised in a personal restraint petition.  *Id.*

2.    Claims Too Vague to Address

Keene appears to assert that there was prosecutorial misconduct during his trial and that his speedy trial rights were violated.

These claims are too vague to address because they do not inform this court of the "nature and occurrence of alleged errors."  RAP 10.10(c).  Keene does not describe what occurrence constituted prosecutorial misconduct.  Similarly, Keene only describes his right to

---

[4] Keene initially filed an approximately 400 page handwritten SAG with additional documentation. RAP 18.17(c)(7) limits the length of a SAG to 50 handwritten pages.  After his filing was rejected for being overlength, a commissioner of this court permitted Keene to file a new SAG no longer than 60 handwritten pages.  Keene submitted a conforming SAG, but attached an additional 340 pages of appendices, mostly from his rejected filing.  We only address those arguments and issues raised in the proper 60 page filing.

speedy trial in the context of alleged ineffective counsel and discontent with the trial court. He does not describe the nature of the speedy trial violation or when it occurred. And to the extent we could address the claims, they appear to rely on facts outside the appellate record. *Alvarado*, 164 Wn.2d at 569.

In addition, Keene makes multiple assertions that are difficult for us to understand and/or contain no explanation regarding their relevance. Again, these claims are too vague to address under RAP 10.10(c).

3. Remaining Claims

Keene argues that (1) there was a lack of probable cause for his arrest; (2) his bail was excessive in violation of the Eighth Amendment of the United States Constitution; and (3) the trial court was biased against him from a prior case involving the defendant's stolen car. We reject these arguments.

a. Probable Cause for Arrest

Keene argues that there was a lack of probable cause for his arrest. An arrest warrant must be issued by a neutral and detached magistrate who determines probable cause exists and that a crime was committed by the suspect named in the warrant. *State v. Hatchie*, 161 Wn.2d 390, 398, 166 P.3d 698 (2007).

Keene's arrest was not warrantless. The victim's mother directly notified police when she learned of Keene's actions against her child. The affidavit supporting the arrest warrant identified Keene and how CW's mother conveyed Keene's alleged crimes, and that Keene fled the police. This was sufficiently reliable to support probable cause, and there is no indication that the information was otherwise unreliable. Accordingly, we reject this argument.

15

b.    Excessive Bail

Keene asserts that his bail, set at $1 million and then reduced to $750,000, was an excessive amount in violation of the Eighth Amendment.[5]  An issue is moot if we can no longer provide effective relief.  *State v. Ingram*, 9 Wn. App. 2d 482, 490, 447 P.3d 192 (2019).  Because Keene is no longer subject to pretrial detention, we cannot provide him with an effective remedy for the trial court's alleged error and his excessive bail claim is moot.  *Id.*  We decline to consider this issue as a matter of continuing and substantial public interest.

c.    Judicial Conflict of Interest

Keene argues that the trial court was biased against him because the trial court presided over a prior case involving Keene's stolen car.  He also appears to argue that the trial court was "directly interested" in the case under RCW 2.28.030(1).  A party claiming bias or prejudice must support the claim with evidence of the trial court's actual or potential bias.  *State v. Gamble*, 168 Wn.2d 161, 187-88, 225 P.3d 973 (2010).  RCW 2.28.030(1) requires a judge to not preside over a case in which "he or she is directly interested."

Keene's allegation that the trial court had a direct interest requiring recusal due to bias is entirely speculative.  Keene offers no evidence – and the record contains no evidence – of actual or potential judicial bias against him.  In addition, the trial court's prior case involving Keene's stolen car is not the type of "direct interest" contemplated by RCW 2.28.030(1).  *See Larson v. Snohomish County*, 20 Wn. App. 2d 243, 286-88, 499 P.3d 957 (2021) (analyzing "directly

---

[5] Keene also appears to assert that related to his bail, he was also subject to pretrial cruel and unusual punishment in violation of the Eighth Amendment due to an inability to sleep and fear.  Although the exact assertion is unclear, it both relies on facts outside the record and does not sufficiently identify the issue for us to address.  *See Alvarado*, 164 Wn.2d at 558; RAP 10.10(c).

interested" under RCW 2.28.030 in the context of family relationships and securities-backed retirement accounts judges allegedly invested in).

Accordingly, we reject this argument.

E.     LEGAL FINANCIAL OBLIGATIONS

Keene argues, and the State concedes, the $500 VPA and community supervision fees should be stricken. We agree.[6]

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). For purposes of RCW 10.01.160(3), a defendant is indigent if they meet the criteria in RCW 10.101.010(3)(a)-(c). Although this amendment took effect after Keene's sentencing, it applies to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16. The trial court found Keene was indigent under RCW 10.101.010(3)(a)-(c), and therefore the VPA cannot be imposed.

The trial court imposed community supervision fees as a condition of Keene's misdemeanor judgment and sentence after stating that it would waive all discretionary legal financial obligations. The State agrees that supervision fees may be stricken.

Accordingly, the VPA and community supervision fees must be stricken from Keene's judgment and sentence.

---

[6] Keene also challenges the statement in the judgment and sentence that court costs and defense costs – which under RCW 10.01.160(3) cannot be imposed on indigent defendants – were "to be set." CP at 120. But there is no indication in the record that the court actually imposed these costs. And Keene challenges the imposition in the misdemeanor judgment and sentence of the costs of collecting unpaid legal financial obligations. But that judgment and sentence did not impose any such obligations, so this provision does not prejudice Keene.

CONCLUSION

We affirm Keene's conviction and sentence, but we remand for the trial court to strike the

VPA and community custody supervision fees.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
CRUSER, C.J.


_____
PRICE, J.