[No. 11807–6–II.   Division Two.   January 17, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES VINCENT GUIZZOTTI, *Appellant.*

*J.R. Yoseph, James F. Gray,* and *Lee, Mitchelson, Yoseph, Gray & Langsdorf,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Christopher Horne, Deputy,* for respondent.

ALEXANDER, J.—James Vincent Guizzotti appeals a judgment and sentence of the Clark County Superior Court which was entered after a jury found Guizzotti guilty of third degree rape. Guizzotti contends that the trial court erred in (1) precluding him from cross examining the complaining witness/victim about her representation by her

own attorney at the criminal proceedings; (2) admitting into evidence a tape recording of the "911" emergency call made by the victim; and (3) denying defendant's motion for mistrial based upon prosecutorial misconduct. We affirm.[1]

On September 30, 1987, Guizzotti was charged in Clark County Superior Court with second degree rape. Thereafter, Guizzotti's counsel entered into a stipulation with the prosecutor to permit the victim's attorney, Ms. Rons, to be present at counsel table with the deputy prosecutor during the criminal trial. The victim's attorney was not to be introduced to the jury. The State then moved in limine

> that there be no discussion by [defense] counsel that Ms. Rons is an attorney for the victim in this case, and especially in view of your Honor's ruling that she not be introduced. Therefore, it would be inappropriate for counsel to raise it and not relevant in any respect.

The defense attorney replied:

> Your Honor, we think that it is relevant, and it is, in fact, obvious that they are not afraid of demonstrating [*sic*]. Certainly, at some point the jury is going to know who Ms. Rons is and that would be natural, and we don't need to have her formally introduced. The fact is that it is certainly unusual, and it would go to bias of the alleged victim insofar as being somewhat indicative of their interest in litigating the matter civilly, perhaps after the conclusion of the criminal aspect.

The trial court granted the State's motion.

At trial, the victim testified that on the evening of September 1, 1987, Guizzotti invited her to go on a boat ride with him. She said that after the boat ride, Guizzotti attempted to kiss her, and when she refused, he proceeded to straddle her and grab at her skirt. According to the victim, he ultimately raped her.

The victim disclosed, further, that during the course of the assault, Guizzotti asked her "whether she liked it," to which she replied, "yes." She said that Guizzotti responded,

---

[1]This opinion replaces our prior opinion, filed July 16, 1990, which we withdrew following the State's motion for reconsideration.

"Too bad this is going to be your last time." He went on to say, according to the victim, "I bet that you're just picturing yourself floating around in the river, don't [sic] you?" She said that at this time she feared for her life.

The victim went on to testify that she eventually was allowed to get dressed and leave the boat. She then ran up a gangplank and into a boatyard where she hid under a tarp behind a building. She stated that Guizzotti followed her into the boatyard and called out her name. The victim said that she could hear the sound of someone walking around the boatyard, and that at one point someone lifted up the tarp on the opposite side of where she was hiding. The victim remained under the tarp until daybreak, at which time she ran to an open building in the boatyard and called "911."

In an effort to obtain admission of a tape recording of the 911 call, the State made an offer of proof, outside the hearing of the jury, concerning the victim's emotional state at the time she placed the 911 call. The victim testified that during the time she hid under the tarp she feared for her safety and was concerned that Guizzotti would be coming after her. She said that she was upset and fearful and still thinking about the rape at the time she called 911. The trial court admitted the tape, over Guizzotti's objection, concluding that it qualified under the excited utterance exception to the hearsay rule, ER 803(a)(2). The tape was thereafter played for the jury. The jury found Guizzotti guilty of third degree rape.

Guizzotti contends that the trial court's order prohibiting him from inquiring into the victim's representation by private counsel at the criminal proceedings violated his Sixth Amendment right of confrontation.[2] In particular, Guizzotti

---

[2]This precise argument was not presented by the defendant below in opposition to the State's motion in limine; however, constitutional claims may be raised for the first time on appeal. *State v. Hieb*, 107 Wn.2d 97, 108, 727 P.2d 239 (1986).

argues that he was denied the opportunity to cross-examine the victim regarding bias or interest stemming from her intention to seek damages in a civil lawsuit. We disagree.

Rights conferred by the sixth amendment to the United States Constitution require that a criminal defendant be permitted to adequately cross-examine an essential state witness as to relevant matters which tend to establish bias or motive. *State v. Roberts,* 25 Wn. App. 830, 834, 611 P.2d 1297 (1980) (citing *Davis v. Alaska,* 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974)). A trial court may, however, refuse to permit cross examination where the circumstances only remotely tend to show bias or prejudice of the witness, where the evidence is vague, or where the evidence is merely argumentative and speculative. *Roberts,* 25 Wn. App. at 834.

With respect to pending civil litigation, a defendant in a criminal prosecution is clearly entitled to show the status of civil actions instituted by the victim/witness against the defendant as bearing on the question whether the victim would profit by a conviction in the criminal case. *See State v. Boesseau,* 168 Wash. 669, 13 P.2d 53 (1932); *State v. Eaid,* 55 Wash. 302, 104 P. 275 (1909); *State v. Constantine,* 48 Wash. 218, 93 P. 317 (1908). This appears to be the majority rule as well. *See* Annot., 98 A.L.R.3d 1060, § 3(a), at 1065–67 (1980).

In *State v. Whyde,* 30 Wn. App. 162, 632 P.2d 913 (1981), Division One of the Court of Appeals extended the rule to cover questions about contemplated civil actions. *Whyde,* 30 Wn. App. at 166. In *Whyde,* the occupant of an apartment building alleged that she had been raped by one of the building's managers. At the rape trial, the trial court excluded evidence that the victim had threatened the owner of the building, who was not the defendant, with civil litigation if he did not refund her damage deposit. *Whyde,* 30 Wn. App. at 164–65. In reversing the defendant's conviction, Division One concluded that the question of a possible lawsuit related directly to the bias, prejudice and interest of the alleged victim, and that the trial court's

ruling excluding such evidence prevented the defendant from making a factual record on which to base his contention that the victim fabricated the rape story for her own financial benefit. *Whyde,* 30 Wn. App. at 167.

We agree with the result reached by Division One in *Whyde* which, we note, similarly appears to be the majority rule amongst those states which have addressed this issue. *See* Annot., 98 A.L.R.3d 1060, § 3(b), at 1067–68. In our judgment, the fact that civil litigation may be contemplated is relevant on the issue of a victim's bias or prejudice.

In this case, however, the trial court did not err on this point. Guizzotti assigns error to the trial court's refusal to allow him to cross-examine the complaining witness regarding her interest or bias. The trial court's ruling did not go that far; defendant exaggerates its scope and effect. The trial court's ruling merely prohibited any "discussion" by defense counsel of Ms. Ron's supposed status as the victim's civil attorney,[3] but the court did not prohibit cross examination of the victim concerning her bias on that or any other ground.

The trial court's ruling left the defense free to inquire of the victim about her intention regarding civil litigation. However, the defense did not attempt any such cross examination, nor did it make an offer of proof concerning any questions it wanted to pose on the subject of bias stemming from civil litigation. In fact, during cross examination covering 36 pages of verbatim transcript, defense counsel did not inquire at all into the victim's bias, prejudice, or interest in reporting the rape.

We note that RCW 70.125.060 allows the victim of a sexual assault to have a "personal representative" accompany her to the hospital, to police and prosecution interviews, and to court proceedings. This entitled the victim to have Ms. Rons present with her in court—as indeed the defense

---

[3]The record contains only a notice of appearance by Ms. Rons and does not reveal anything else about her role in the case or her relationship with the victim.

stipulated—regardless of whether Ms. Rons had any role in contemplated civil litigation.

Thus, we find no error in the trial court's ruling in limine. Ms. Rons had a statutory right to be present as the victim's representative, and there is no evidence that she overstepped her bounds. The trial court's ruling did not prohibit defendant from cross-examining the victim for bias, and he did not attempt to do so. He was not denied his Sixth Amendment rights.

We next address the admissibility of the tape recording of the "911" call. Guizzotti's sole contention is that the statement was not made by the victim while she was under the stress of excitement of the incident and, thus, the statement was inadmissible hearsay. We disagree.

■ Pursuant to ER 803(a)(2), some statements relating to a startling event or condition are not excluded by the hearsay rule. To be admissible, however, the statement must be made while the declarant is under the "stress of excitement" caused by the event or condition. *State v. Downey*, 27 Wn. App. 857, 860, 620 P.2d 539 (1980). The requisite nexus between the event and the statement was set forth by the court in *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939), as follows:

> while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation,
> . . ..

*Beck,* 200 Wash. at 10; *Downey,* 27 Wn. App. at 860.

The evidence here shows that the victim fled the boat at approximately 11 p.m. She did not place the 911 call until approximately 6:30 a.m. the following morning. Guizzotti contends that the 911 call was not made soon enough after the alleged rape to insure that the victim was still under the stress of excitement caused by the event at the time of the call.

Guizzotti's argument overlooks the intervening events. After the alleged rape, the victim stated that she was followed into a boatyard by the defendant whereupon she hid under a tarp for approximately 7 hours until daybreak. The victim stated that during this time she did not sleep, she thought the defendant was looking for her and she feared for her life. Given these circumstances, we fail to see how the "startling event" ceased when the alleged victim exited the boat. On the contrary, under the events described by the victim, she would appear to have been under the continuing stress of the event at the time the call was placed. Accordingly, we do not find the trial court to have abused its discretion in admitting the tape recording.

■ Finally, we take up Guizzotti's contention that the trial court erred in denying a motion for mistrial based on the prosecutor's alleged misstatements of fact in closing argument. We review this ruling only for abuse of discretion. *State v. Harvey,* 34 Wn. App. 737, 664 P.2d 1281, *review denied,* 100 Wn.2d 1008 (1983). Counsel have latitude in closing argument to draw and express reasonable inferences from the evidence. *Harvey,* 34 Wn. App. at 739. Counsel may not, however, mislead the jury by misstating the evidence; this is particularly true of a prosecutor—a quasi–judicial officer, who has a duty to see that the defendant receives a fair trial. *State v. Reeder,* 46 Wn.2d 888, 892, 285 P.2d 884 (1955).

■■ The defense has the burden of showing both the impropriety of the prosecutor's remarks and their prejudicial effect. *Harvey,* 34 Wn. App. at 740. Where impropriety is present, reversal is required only if a substantial likelihood exists that the misconduct affected the jury's verdict, thereby depriving the defendant of a fair trial. *State v. Evans,* 96 Wn.2d 1, 5, 633 P.2d 83 (1981). The court may mitigate potential prejudice by instructing the jury that such statements are not evidence and should not be so considered. *State v. Grisby,* 97 Wn.2d 493, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211 (1983). Moreover, reversal is not required if error could have been avoided by a curative

instruction, but the defense failed to request one. *State v. Martin,* 41 Wn. App. 133, 703 P.2d 309, *review denied,* 104 Wn.2d 1016 (1985).

Defendant's brief argues that the prosecutor made prejudicial misstatements in several particulars during closing argument. The defense moved for a mistrial as a result of only one remark: the prosecutor's characterization of defense counsel's argument as "a little bit of smoke . . . attempted to confuse the evidence." The defense made no objection to most of the other remarks when they were made, giving the trial court no opportunity to rule on them. We find no reversible error in the prosecutor's closing argument, and we deem it necessary to address only two of the specific remarks to which Guizzotti now objects.

Guizzotti objects to the prosecutor's comment that a physician who examined the victim found a slight perineal tear caused by "forcible" sexual intercourse, which he said corroborated what the victim reported to police in her 911 call, the tape of which the jury heard. Defendant argues that the physician merely described the tear as being consistent with "rough" or "aggressive" intercourse, without regard to whether it was consensual. Because the word "forcible" suggests something effected by the use of force, which in turn undermines Guizzotti's defense that he and the victim had consensual intercourse, the misstatement of the doctor's testimony is significant.

The misstatement did not, however, create a substantial likelihood that the jury's verdict was affected. The trial court instructed the jury generally that counsel's arguments were not evidence and were to be disregarded when not supported by the evidence. At the time of the remark, the trial court also stated, in response to a defense objection, that: "The jury will remember the testimony and make its determination from that." Jurors are presumed to follow the court's instructions. *Harvey,* 34 Wn. App. at 740. In view of the totality of the evidence and the trial court's cautionary instructions, it is unlikely that the jury's verdict was affected.

The other facet of this argument is that the 911 tape allegedly did not, contrary to the prosecutor's remark, corroborate the use of force during intercourse. We disagree. The victim reported a "rape" to the police, as recorded on tape. A reasonable inference from that report would be that the intercourse was forcible.

Finally, Guizzotti argues that the characterization of his attorney's argument as "smoke" and an attempt to confuse the evidence was improper. We think counsel's choice of words was unfortunate, but we find no error. The prosecutor was rebutting defense counsel's own argument that the victim had not reported the rape to any harbor police or security patrol. The prosecutor's point was that the evidence failed to show that any harbor police or security officers were present to take a report, so the defense argument was unfounded. In the circumstances, the remark was not improper.

Judgment affirmed.

PETRICH, A.C.J., and DRAPER, J. Pro Tem., concur.

Review denied at 116 Wn.2d 1026 (1991).