IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81423-1-I (Consolidated |
| | ) | with No. 82795-2-I) |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| RONALD CHARLES MARKOVICH, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Ronald C. Markovich seeks reversal of his conviction for possession of methamphetamine and heroin with intent to deliver or manufacture, alleging that the trial court violated his right to present a defense by limiting the testimony of his expert witness and that the prosecutor committed misconduct during closing argument. In supplemental briefing, Markovich contends that he is entitled to resentencing after the Washington Supreme Court's decision in State v. Blake[1] because the out-of-state convictions for simple drug possession that were included in the calculation of his offender score are no longer comparable to any valid Washington crime. We agree that Blake requires remand for resentencing but otherwise affirm.

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

FACTS

In the early morning hours of July 13, 2017, police officers broke down the door of an apartment in Everett while executing a search warrant. Ronald Markovich was sitting on a couch in the front room of the apartment. Officers noticed digital scales, loaded and unloaded syringes, baggies, burnt aluminum foil, and a small stack of cash near the couch. Markovich was handcuffed and led outside the apartment. He had a small "baggie" containing a white substance in his pocket. The substance was later determined to be less than a gram of methamphetamine. Ann Gjesvold and two other people were found in the bedroom of the apartment. In the bedroom, officers also discovered a black fabric bag containing a larger quality of methamphetamine, heroin, and related drug paraphernalia. Markovich was charged with possession of methamphetamine and heroin with intent to deliver or manufacture.

Before trial, Markovich moved to suppress statements he made to police on the night of his arrest. The defense called Dr. Jennifer Stankus as an expert witness at the CrR 3.5 hearing. Stankus had reviewed Markovich's medical records from the jail and his declaration. The records showed that he had ecstasy, heroin, alcohol, and methamphetamine in his system on the day of his arrest. Stankus also noted that his heart rate and blood pressure were elevated. She opined that these physical symptoms indicated that Markovich was under the influence of ecstasy at the time. When asked about Markovich's ability to make a knowing and voluntary waiver of his rights in this condition, she responded, "[I]n my experience dealing with people, particularly, on ecstasy, I have found that what

people tell me at the time that they are intoxicated can be quite inconsistent with what they tell me when they are sober." After the hearing, the court found that Markovich's statements to police were knowingly, willingly, and voluntarily made, and noted that it was unpersuaded by Stankus' opinions and conclusions. The court ruled that Markovich's statements were admissible and denied his motion to suppress.

The State moved to exclude Stankus as an expert witness at trial, and the court held a hearing on the motion. Stankus testified that she had interviewed Markovich since the CrR 3.5 hearing and had added an opinion to her expert report that, "had there been a closed-head injury, that could have exacerbated the encephalopathy." She defined "encephalopathy" as "just a generalized term that means the brain isn't functioning as it should." She also acknowledged that she could not diagnose hypertensive encephalopathy or a closed-head injury with certainty from her review of Markovich's records.

The court ruled that the defense would be allowed to present Stankus' opinion that Markovich's statements were "unreliable, given the patient's encephalopathy due to polysubstance and alcohol intoxication, coupled with dangerously elevated blood pressure." However, the court excluded testimony regarding her opinion "that a closed-head injury concussion would magnify the other encephalopathy due to toxicologic ingestions and provide additional support for the opinion provided." The court explained that, because Stankus had not diagnosed Markovich with a concussion and had not "made [the opinion] applicable to this case," it was only "a general statement." The court also stated

that allowing Stankus to testify to an opinion based on an interview with Markovich would amount to "backdooring hearsay."

At trial, Officer Anatoliy Kravchun testified that he was part of the team that executed the search warrant and that he had spoken with Markovich while other officers were searching the apartment. He related their conversation to the jury:

> I asked him if drugs were being sold at the house. He told me that drugs were being—drugs were coming out of the house. I asked him specifically what kind of drugs. He told me meth and heroin. I asked him if he sold drugs. He told me he didn't. I asked him about a small baggie I had found in his pocket. He told me it was for personal use. I asked him—well, he also told me that even though he didn't sell drugs that he would sometimes get drugs for the people that came to the house.

Kravchun testified that the conversation was "normal" and that Markovich seemed to understand and be able to answer his questions.

Markovich took the stand and testified that he had been sitting on the couch when the officers breached the apartment door. He did not recall the officers saying anything to him but stated that an officer had grabbed him off the couch and threw him on the floor. He remembered an officer kneeling on his rib cage and stated that his "head got slammed on the floor a few times."

Stankus then testified that she had reviewed Markovich's records and interviewed Markovich. She again testified to the substances in his system and his elevated heart rate and blood pressure. She opined that Markovich was suffering from encephalopathy, or poor brain functioning, at the time of his arrest due to substance use and hypertension. Defense counsel asked whether head trauma could cause encephalopathy, but the court sustained the State's objection to this question and instructed the jury to disregard it.

During closing argument, the prosecutor argued that, even if Markovich was not dealing drugs, he was acting as an accomplice by "going out, . . . finding people[,]" and "telling them about the address." The defense objection that these facts were not in evidence was overruled, and the court reminded the jury that "the lawyers' remarks, statements, and arguments are not the evidence." The prosecutor then argued that Markovich "was finding people to come to the house to get drugs" and was acting as the "doorman" at the apartment:

> He found the people, and then when a knock came at the door, he would open it. He would see that they were the people he had found and had told about the drugs inside, and then he would get them the drugs that he told them he would get them.

Defense counsel did not object to this argument.

> In closing, defense counsel addressed this portion of the State's argument:

> [T]his case is about overreaching, and a great example of this is the State just got up and argued somehow that Mr. Markovich is wandering the streets looking for customers. Why would the State make an argument like that if the evidence that was here actually supported the case? They're reaching.

The prosecutor then stated in rebuttal, "You know that Mr. Markovich was, in fact, walking around trying to find people; because he said so. The actual words that he said to Anatoliy Kravchun, again, were, he gets drugs for people who come to the house." Defense counsel did not object to this argument.

The jury was instructed on accomplice liability, possession with intent to deliver, and the lesser included offense of simple possession. Markovich was convicted as charged.

The court imposed a high-end standard range sentence of 108 months in prison followed by 12 months of community custody. The court explicitly addressed legal financial obligations (LFOs) at sentencing:

> As far as the financials, there's—in looking at all of these convictions, he owes financials on all of them. He's never made any, that I know of, any willing payments on any of his cases.
> I'm going to find extraordinary circumstances that he doesn't have the ability nor likelihood nor ever have a likelihood of paying anything on these. I'm waiving the victims compensation fund fine. I'm waiving the DNA [collection fee] because that's already been had. I'm not imposing any other fines, fees, costs, or assessments, for a grand total judgment of 0 in this case.

The judgment and sentence reflected the court's finding of exceptional circumstances and stated that Markovich owed $0.00 in LFOs. However, it included a preprinted condition of community custody stating that Markovich shall "pay supervision fees as determined by [the Department of Corrections]." Markovich appealed his judgment and sentence.

While this appeal was pending, the Washington Supreme Court decided State v. Blake, holding that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violated the due process clauses of the state and federal constitutions and was void. 197 Wn.2d at 186. Markovich filed a motion for resentencing in superior court, arguing that he was entitled to resentencing in light of Blake because his two prior out-of-state convictions for drug possession were included in the calculation of his offender score. The motion was transferred to this court for consideration as a personal restraint petition. [2]

_____

[2] The personal restraint petition (PRP), case No. 82795-2-I, and appeal were consolidated under case No. 81423-1-I. On July 21, 2021, counsel for Markovich sent a letter to the Administrator/Clerk of this court and opposing counsel requesting dismissal of the PRP based on the submission of supplemental briefing on the sentencing issue in this appeal and indicating that

ANALYSIS

I.    Limitation on Expert Testimony

Markovich contends that the trial court erred when it prohibited Stankus from testifying about the effects of a head injury on brain functioning.  He contends that the improper limitation on the expert's testimony denied him the right to present a defense.

Accused persons have a state and federal constitutional right to confront and cross-examine adverse witnesses and to present their defense, examine witnesses, and offer testimony.  U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."  Chambers, 410 U.S. at 294.

Washington courts apply a two-part analysis to determine whether the exclusion of evidence violates a defendant's constitutional right to present a defense.  State v. Arndt, 194 Wn.2d 784, 797–98, 453 P.3d 696 (2019).  We review a trial court's evidentiary ruling for an abuse of discretion.  Id. at 797.  We then consider de novo the constitutional question of whether the trial court's ruling deprived a defendant of their right to present a defense.  Id. at 797–98.

---

a motion to that effect would be forthcoming. However, although the supplemental briefing on that question was filed in the appeal, the request for resentencing under Blake was raised only in the PRP. Dismissal of the PRP would remove that issue from this panel's consideration. Accordingly, we decline to dismiss the PRP that has been consolidated with the direct appeal.

"Evidence that a defendant seeks to introduce 'must be of at least minimal relevance.'" Jones, 168 Wn.2d at 720 (quoting State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. A defendant has no constitutional right to present irrelevant evidence, but only minimal logical relevancy is required for evidence to be admissible. Jones, 168 Wn.2d at 720; State v. Bebb, 44 Wn. App. 803, 814, 723 P.2d 512 (1986). If the proffered evidence is relevant to the defense, the right to present a defense places the burden on the State to show that the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial. Darden, 145 Wn.2d at 622. The greater the prejudicial effect of the excluded evidence, the more likely a reviewing court is to find a constitutional violation. See Jones, 168 Wn.2d at 720–21. For highly probative evidence, "'it appears no state interest can be compelling enough to preclude its introduction consistent with the Sixth Amendment [of the United State Constitution] and [article 1, section 22 of the Washington Constitution].'" Id. at 720 (alterations in orginal) (quoting State v. Hudlow, 99 Wn.2d 1, 16, 659 P.2d 514 (1983)).

Expert testimony is admissible if the witness qualifies as an expert and the testimony will assist the trier of fact. ER 702; State v. Thomas, 123 Wn. App. 771, 778, 98 P.3d 1258 (2004). Expert opinion is considered helpful when "it concerns matters beyond the common knowledge of the average layperson and does not mislead the jury." Thomas, 123 Wn. App. at 778. Proposed expert testimony is

not helpful or relevant if it is based on speculation. State v. Richmond, 3 Wn. App. 2d 423, 431, 415 P.3d 1208 (2018). The facts or data on which the expert bases an opinion may be known to the expert before testifying or presented during testimony. ER 703. If those facts or data are of "a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject," the facts or data themselves need not be admissible. Id.

Markovich argues that the court appeared to exclude a portion of the expert testimony on the ground that the basis for the opinion was Markovich's interview rather than the jail's medical records. He contends that the trial court's rationale for exclusion is unclear but appears to ignore ER 703, which allows for expert opinion to be based on data that is not admissible.

The State argues that the court properly limited Stankus' testimony "to prevent her from offering conjecture or speculation based on unwarranted assumptions not in evidence." It argues that the testimony was inadmissible under ER 702 and ER 703 because the proffered opinion testimony lacked proper foundation and was not helpful to the trier of fact. Therefore, the State argues that the trial court did not prevent Markovich from advancing his theory of the case, but only "excluded speculative opinion from [Stankus] that failed to meet the criteria for admissibility under the rules of evidence."

Here, the court did not abuse its discretion in excluding Stankus' opinion that a concussion would magnify the effects of substance-induced encephalopathy. Markovich had not been diagnosed with a concussion at the booking intake. Any opinion from Stankus that he may have sustained a

concussion from head trauma would necessarily be speculative, and any general statement that a concussion could compound existing encephalopathy would not be relevant.

Markovich argues that, even assuming that the trial court's initial ruling was valid, "the court's reasons for excluding the evidence evaporated when Markovich testified at trial that he had suffered a head injury" because "[i]n-court statements now undergirded Dr. Stankus's medical opinion." However, this does not address the underlying issue that he was not diagnosed with any effects of a head injury. The court did not abuse its discretion in excluding this evidence.

II.     Prosecutorial Misconduct

Markovich also contends that the State committed prosecutorial misconduct during closing argument by "concoct[ing] a drug distribution scenario unsupported by the evidence" and reemphasizing the argument in rebuttal.

Prosecutorial misconduct may deprive a defendant of their constitutional right to a fair trial. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). A prosecutor is a "'quasi judicial officer, representing the People of the state, and presumed to act impartially in the interest only of justice.'" State v. Reed, 102 Wn.2d 140, 147, 684 P.2d 699 (1984) (emphasis omitted) (quoting People v. Fielding, 158 N.Y. 542, 547, 53 N.E. 497 (1899)). As such, "[a] prosecutor has a duty to refrain from using statements which are not supported by the evidence and which tend to prejudice the defendant." State v. Grover, 55 Wn. App. 923, 936, 780 P.2d 901 (1989).

The defendant bears the burden to establish prosecutorial misconduct by showing that the challenged conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To show prejudice, the defendant must prove that there is a substantial likelihood that the misconduct affected the jury's verdict. Id. at 442–43. We evaluate allegedly improper comments in the context of the entire argument. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). We also recognize that "[r]epetitive misconduct can have a 'cumulative effect.'" State v. Loughbom, 196 Wn.2d 64, 77, 470 P.3d 499 (2020) (internal quotation marks omitted) (quoting State v. Allen, 182 Wn.2d 364, 376, 341 P.3d 268 (2015)).

In closing argument, prosecutors have wide latitude to draw reasonable inferences from the evidence and to express those inferences to the jury. Fisher, 165 Wn.2d at 746–47. "Counsel may not, however, mislead the jury by misstating the evidence." State v. Guizzotti, 60 Wn. App. 289, 296, 803 P.2d 808 (1991). This is particularly true for the prosecutor, who has a duty to ensure that the defendant receives a fair trial. Id. "Defendants are among the people the prosecutor represents. The prosecutor owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated." State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011).

Markovich analogizes this case to State v. Reeder, 46 Wn.2d 888, 285 P.2d 884 (1955). In Reeder, the defendant was charged with the murder of the man with whom his wife was having an affair. Id. at 889–90. During cross-examination of the defendant, the prosecutor questioned him about a divorce complaint filed by

his former spouse in which she stated that he had struck her on numerous occasions and threatened her with a gun. Id. at 891. Reeder responded, "I never threatened her with a gun." Id. The divorce complaint was not read to the jury or admitted into evidence. Id. In closing argument, the prosecutor repeatedly argued that Reeder threatened his first wife with a gun. Id. at 891–92. The Washington Supreme Court found prosecutorial misconduct, reasoning, "There is not one word of testimony in the record that the defendant threatened his first wife with a gun. The only testimony concerning that question is that he did not do so." Id. at 892. The court reversed Reeder's conviction even though defense counsel had not objected to the prosecutor's statements because "the harm had already been done and it could not have been cured by instructions to disregard the statements so flagrantly made." Id. at 893.

Here, the State concedes that "there was no testimony that the defendant went looking for buyers whom he later allowed into the apartment." However, it argues that "the challenged remark of the prosecutor was brief and not inflammatory" and that, "[w]hile the prosecutor may have garbled his argument by inferring that the defendant went looking for buyers, it is unlikely that the jurors would be misled by the inartful remark."

Although the prosecutor in this case took significant liberty with his inferences from the testimony, the challenged statements were not such flagrant mischaracterizations of the evidence as those in Reeder. Given the considerable latitude afforded advocates to draw and argue inferences from the evidence, we cannot say that the arguments were entirely unsupported by the testimony. While

the prosecutor may have inaccurately characterized his argument as restatement of the testimony rather than an inference from the evidence presented, the court's timely reminder that counsel's arguments were not evidence served to correct this misstep.[3]

III.    Offender Score

In supplemental briefing, Markovich argues that he is entitled to resentencing following the Washington Supreme Court's recent opinion in Blake, 197 Wn.2d 170.  In Blake, the court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violated the due process clauses of the state and federal constitutions and was void.  Id. at 186, 195.  "'[A]n unconstitutional law is void, and is as no law[;]'" accordingly, a penalty imposed pursuant to an unconstitutional law is void even if the prisoner's sentence became final before the law was held unconstitutional.  Montgomery v. Louisiana, 577 U.S. 190, 204, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016) (quoting Ex parte Siebold, 100 U.S. 371, 376, 25 L. Ed. 717 (1879)).  Markovich contends that his sentence is invalid because the prior out-of-state convictions for simple drug possession that were included in the calculation of his offender score are no longer comparable to any valid Washington crime.

The Sentencing Reform Act of 1981 (SRA)[4] establishes a mechanism to determine a defendant's presumptive sentencing range based on the seriousness of the current offense and an offender score calculated from the defendant's prior

---

[3] Because we find no error, we do not address Markovich's contention that the cumulative effect of these errors denied him a fair trial.

[4] Ch. 9.94A RCW.

convictions. RCW 9.94A.505, .510, .520, .525; State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d 187 (2014). For purposes of offender score calculations, the SRA provides that "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3). This statute exists "'to ensure that defendants with equivalent prior convictions are treated the same way, regardless of whether their prior convictions were incurred in Washington or elsewhere.'" State v. Morley, 134 Wn.2d 588, 602, 952 P.2d 167 (1998) (internal quotation marks omitted) (quoting State v. Villegas, 72 Wn. App. 34, 38–39, 863 P.2d 560 (1993)). We review the trial court's comparability analysis in calculating an offender score de novo. Olsen, 180 Wn.2d at 472.

"Comparability is both a legal and a factual question." State v. Collins, 144 Wn. App. 547, 553, 182 P.3d 1016 (2008). The "legal prong" of the comparability analysis requires the court to determine whether "'the Washington statute defines the offense with elements that are identical to, or broader than, the foreign statute,'" in which case "'the foreign statute is necessarily comparable to a Washington offense.'" State v. Howard, 15 Wn. App. 2d 725, 731, 476 P.3d 1087 (2020) (quoting Collins, 144 Wn. App. at 553). If the offenses are not legally comparable, the court analyzes whether the offenses are factually comparable by determining whether the defendant's conduct would have violated the comparable Washington statute. Morley, 134 Wn.2d at 606. "If an out-of-state conviction involves an offense that is neither legally or factually comparable to a Washington offense, the

sentencing court may not include the conviction in the defendant's offender score." State v. Arndt, 179 Wn. App. 373, 379, 320 P.3d 104 (2014).

A prior conviction based on a constitutionally invalid statute may not be considered when calculating an offender score. See State v. Ammons, 105 Wn.2d 175, 187–88, 713 P.2d 719 (1986). "[A] sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice." In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 868, 50 P.3d 618 (2002). The remedy for such a defect is resentencing under the correct offender score. State v. Wilson, 170 Wn.2d 682, 690, 244 P.3d 950 (2010).

Here, Markovich does not argue that the trial court incorrectly conducted the comparability analysis or that the Washington and Montana statutes were not legally comparable at the time of sentencing. Rather, he argues that,

> [b]ecause there is no possibility of comparability between a foreign statute and a void Washington statute—a statute which was void at the time the foreign convictions occurred—the plain language of the Sentencing Reform Act indicates that the foreign convictions may not be used in calculating the offender score.

The State responds that "[t]here is no constitutional prohibition against counting the Montana conviction[s]" because "Montana's drug possession statute does not suffer from the same flaw as the former Washington statute invalidated by Blake."

Although the State is correct that the Blake decision did not invalidate Markovich's Montana convictions, the out-of-state convictions must be comparable to a valid Washington offense to be included in the calculation of the offender score. In Blake, the Supreme Court declared Washington's strict liability drug possession statute unconstitutional and void. Because penalties imposed under

- 15 -

the invalid statute are void, defendants who were sentenced based on an offender score that included prior convictions under this unconstitutional statute are entitled to resentencing. See State v. Sullivan, No. 81254-8-I, slip op. at 1, 22 (Wash. Ct. App. Jul. 6, 2021), http://www.courts.wa.gov/opinions/pdf/812548.pdf; State v. LaBounty, __ Wn. App. 2d __, 487 P.3d 221, 221–24 (2021). In accordance with the principle that the comparability analysis exists to ensure equal treatment of defendants who engage in the same conduct in Washington or elsewhere, Markovich must also be entitled to resentencing under an adjusted offender score.

IV.    Reassignment

Markovich also contends that his resentencing should occur before a different judge. He argues that the sentencing judge appears to have "prejudged" the matter because the judge transferred his motion for resentencing in light of Blake to this court.

When a defendant files a motion for relief from judgment under CrR 7.8, the trial court retains and hears the motion only if the motion is timely and either the defendant has made a substantial showing that they are entitled to relief or resolution of the motion requires fact finding. CrR 7.8(c)(2); State v. Robinson, 193 Wn. App. 215, 218, 374 P.3d 175 (2016). In all other instances, the trial court shall transfer the motion to the Court of Appeals for consideration as a personal restraint petition. CrR 7.8(c)(2). Transfer "should not be automatic, but may be appropriate when, for example, a new trial motion raises legal issues only and does not require factual determinations that are the province of the trial court." State v.

Smith, 80 Wn. App. 462, 470 n.3, 909 P.2d 1335 (1996), rev'd on other grounds, 131 Wn.2d 258, 930 P.2d 917 (1997).

A party may seek reassignment to a different judge for the first time on appeal "where, for example, the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue." State v. McEnroe, 181 Wn.2d 375, 387, 333 P.3d 402 (2014). This remedy is available in limited circumstances, and "even where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally not available as an appellate remedy if an appellate opinion offers sufficient guidance to effectively limit trial court discretion on remand." State v. Solis-Diaz, 187 Wn. 2d 535, 540, 387 P.3d 703 (2017). However, if the record shows that "the judge's impartiality might reasonably be questioned," the appellate court should remand the case to a different judge. Id.

Reassignment is not warranted here. Although Markovich argued that his motion required the trial court to conduct a factual hearing regarding the comparability of the out-of-state offenses, the underlying question of whether he was entitled to resentencing after Blake was a purely legal issue. In the absence of any direct appellate authority on this issue, the trial court's conclusion that Markovich had not made a substantial showing that he was entitled to relief does not amount to a prejudgment of the merits. In any event, our conclusion that Markovich's Montana convictions for drug possession cannot count toward his

offender score effectively limits the trial court's discretion on remand. Markovich presents no other evidence of bias or impartiality.

V.      Supervision Fees

Markovich contends that the supervision fees imposed as a condition of his community custody should be stricken from his judgment and sentence because the record demonstrates that the trial court intended to waive all discretionary fees. Community custody supervision fees are discretionary LFOs because they are waivable by the trial court. State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020). In State v. Dillon, we struck supervision fees from the defendant's judgment and sentence because the record demonstrated that the trial court intended to impose only mandatory LFOs and inadvertently imposed the supervision fees because of their location in the prewritten judgment and sentence form. Id.

Here, the trial court was explicit regarding its intention to waive all LFOs, even going so far as to find that exceptional circumstances justified waiver of the mandatory victim penalty assessment. As in Dillon, it is clear that the court inadvertently imposed the supervision fees because of the term's location in the judgment and sentence. The community custody supervision fee should be revisited upon resentencing.

Remanded for resentencing.

_____

WE CONCUR:

_____   _____
Dwyer, J.                          Appelwick, J.