IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>        v.<br><br>PETER J. DROZ,<br><br>                Appellant. | No. 86912-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Peter Droz appeals from his conviction for attempting to elude a pursuing police vehicle after a jury trial. Droz avers that certain of the prosecutor's statements during closing argument constituted misconduct that deprived him of a fair trial such that reversal is required. We disagree and affirm.

FACTS

Droz was driving in Gold Bar on May 20, 2019, when he was pulled over by Snohomish County Sheriff's Office Deputy Chad Daugherty. While both Droz and Daugherty agreed that the stop occurred sometime between 9:30 and 10:00 p.m. and the night was dark and rainy, they offered diverging accounts of the incident when they eventually testified at the resulting trial.

Daugherty observed a van drive through two consecutive stop signs without halting. He then activated his emergency lights to effect a traffic stop and the vehicle complied. Daugherty approached the vehicle on the driver's side. Daugherty spoke to Droz, identified himself as a deputy and explained why he had

stopped the van. Daugherty later described Droz's answers to his questions as "loud" and that eventually Droz "refused to speak" to him. Daugherty then requested Droz's identification. Daugherty testified that Droz then turned the steering wheel to the left, directing the van towards where Daugherty was standing, and drove the vehicle away. Daugherty stated that "the rear tires nearly ran over" his feet and passed "maybe a quarter inch from the fronts of" his boots. Daugherty returned to his vehicle and began a pursuit, following Droz onto Highway 2. Daugherty's emergency lights and siren remained activated throughout the pursuit. Daugherty testified that the top speed reached by both vehicles was 100 miles per hour and several cars had to yield and pull off the road. Daugherty performed a "PIT maneuver"[1] to stop the van and, as a result, the van spun, travelled into a ditch, and rolled. Daugherty and his sergeant placed Droz under arrest at the scene.

Droz also testified at trial and asserted he had complied with both stop signs. Droz stated that a black truck then pulled behind him, but he had difficulty observing any of the vehicle's details because of its bright lights. Droz could not discern the color of the lights beyond "kind of a yellow tint" and was unable to tell who was driving the truck. Droz described the driver who he said approached him as "mad" and "[s]creaming [']get out of the car.[']" Droz denied being asked to provide identification or other documentation by this person and testified that he was "scared" because people had been robbed in that neighborhood and he did

---

[1] Daugherty stated that a "PIT maneuver" is a "pursuit immobilization technique" where the front bumper of the law enforcement vehicle makes contact with the back corner of the pursued vehicle causing it to spin and stop.

not "want to get car jacked or anything like that." Droz explained he suspected he was about to be the victim of a robbery, so he drove away; he navigated the residential area and made his way back to Highway 2. Once he reached Highway 2, Droz stated his rate of travel was "60, maybe 65" miles per hour and that he did not see any other vehicles besides the pursuing truck.

On May 19, 2022, the State charged Droz with attempting to elude a pursuing police vehicle. The trial was delayed several times and eventually commenced on January 16, 2024. The State introduced testimony from Daugherty and another SCSO deputy who was present when Droz was arrested, and Droz testified on his own behalf. The jury was given instruction no. 1 which, in relevant part, directed the jurors to consider witness testimony and credibility in the following manner:

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In assessing credibility, you must avoid bias, conscious or unconscious, including bias based on religion, ethnicity, race, sexual orientation, gender or disability.
> In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things [they] testif[y] about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of [their] testimony.[2]

The jury was also instructed as follows on Droz's defense theory of the case:

> It is a defense to a charge of [a]ttempting to [e]lude a [p]olice [v]ehicle that a reasonable person would not have believed that the

---

[2] This mirrors the language contained 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 1.02, at 26 (5th ed. 2024).

- 3 -

signal to stop was given by a police officer and that the Defendant's driving after the signal to stop was reasonable under the circumstances.

The jury found Droz guilty as charged and the trial judge sentenced him to 22 months in prison.

Droz timely appealed.

ANALYSIS

I. Prosecutorial Misconduct

Droz's sole assignment of error on appeal is a claim of prosecutorial misconduct. Specifically, he avers that statements made by the State during closing argument amounted to prosecutorial misconduct that prejudiced him such that he was denied his right to a fair trial. He contends "the prosecutor used closing argument to impermissibly disparage Mr. Droz's exercise of his constitutional right to testify while urging the jury to adopt a presumption of Mr. Droz's guilt based on his status as a criminal defendant." The State's response brief counters that Droz "cannot show the trial court abused its discretion in overruling the objections" he made in response to the statements now challenged on appeal.

"We review allegations of prosecutorial misconduct under an abuse of discretion standard." *State v. Azevedo*, 31 Wn. App. 2d 70, 78, 547 P.3d 287 (2024). "To prevail on a prosecutorial misconduct claim, a defendant who timely objects to a prosecutor's conduct at trial must prove that the 'conduct was both improper and prejudicial in the context of the entire trial.'" *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020) (quoting *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976 (2015)). If there was a timely objection, to "establish prejudice, the

defendant must show a substantial likelihood that the error affected the jury verdict." *State v. Molina*, 16 Wn. App. 2d 908, 918, 485 P.3d 963 (2021). We consider the challenged "statements in the context of the entire case." *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). This includes "the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). A prosecutor "functions as the representative of the people in a quasijudicial capacity in a search for justice," including the accused, thus, the States owes them a duty to "to see that their rights to a constitutionally fair trial are not violated." *State v. Monday*, 171 Wn.2d 667, 676, 257 P.3d 551 (2011). "Prosecutorial misconduct may deprive a defendant of their constitutional right to a fair trial." *State v. Markovich*, 19 Wn. App. 2d 157, 169, 492 P.3d 206 (2021).

Droz's challenge is centered on the following statement by the prosecutor:

> [THE STATE:] Now, you heard from Mr. Droz himself about this, about what he said happened that day. You were given a[n] instruction about credibility. And that's part of what being a juror is and part of what we talked about in the jury selection, that being a juror, you weigh the credibility of different witnesses.
> You have Deputy Daugherty. He does training for anyone who does driving training for the county sheriff's department, law enforcement for 20 years, has training and experience with accurately measuring speeds, estimations and pacing, out there doing his job, talking about how, like he does in every case, identified himself as an officer when he pulls someone over, asks for license and registration, and that the defendant just took off and drove in this manner.
> Then you have Mr. Droz. Now, you don't have to imagine why Mr. Droz would get on the stand and have a reason to say things differently. You don't have to imagine what his motivation could be in this situation where he is on trial for a crime.

> [DROZ]: Objection. Improper.

THE COURT: Overruled.  Do you want to be heard?

. . . .

[THE STATE:] I'd ask that after looking at all of the elements in this case, looking fairly at the testimony, weighing it and looking at the people that are—that are giving this testimony and the reasons for why they're giving this testimony—because that is the important thing here, and that is something you can't hide your heads in the sand about.

[DROZ]: Objection.  Improper.

THE COURT: Overruled.

Droz offers several related grounds on which he contends we should conclude the prosecutor's statements were improper: the State undermined the presumption of innocence and improperly shifted the burdened of proof and further set up an "improper comparison of the honesty of a defendant with law enforcement."  He also contends that because he exercised his right to testify in his own defense, "it was impermissible misconduct for the prosecutor to argue adverse inferences from the exercise of that right."

A.     Presumption of Innocence and Burden of Proof

First, as to the presumption of innocence and the burden of proof, Droz asserts that when the prosecutor's statement, "You don't have to imagine what his motivation would be in this situation where he is on trial for a crime," was coupled with their admonition that the jurors could not "hide [their] heads in the sand" about the reasons a witness might give certain testimony, such argument was "inconsistent with the presumption of innocence" and, as a result, "the prosecution diluted its burden of proof."  We disagree.

The due process clause of the Fourteenth Amendment to the United States Constitution requires "the State to prove 'beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [a defendant] is charged.'" *State v. W.R.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014) (alterations in original) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)); U.S. CONST. amend. XIV, § 1. A prosecutor engages in misconduct if they misstate the law regarding the presumption of innocence or otherwise undermine it. *See State v. Johnson*, 158 Wn. App. 677, 685-86, 243 P.3d 936 (2010) ("[A] misstatement about the law and the presumption of innocence due a defendant, the 'bedrock upon which [our] criminal justice system stands,' constitutes great prejudice because it reduces the State's burden and undermines a defendant's due process rights." (some alteration in original) (quoting *State v. Bennett*, 161 Wn.2d 303, 315, 165 P.3d 1241 (2007)). "A prosecutor may not argue that to *acquit* a defendant, the jury must find that the State's witnesses are either *lying* or *mistaken*. Such arguments may undermine the presumption of innocence, shift the burden of proof, and mislead the jury." *State v. Rafay*, 168 Wn. App. 734, 836, 285 P.3d 83 (2012). "In general, a prosecutor's argument that shifts the burden to the defense is improper." *State v. Cardenas-Flores*, 194 Wn. App. 496, 515, 374 P.3d 1217 (2016), *aff'd*, 189 Wn.2d 243, 401 P.3d 19 (2017).

In briefing, Droz relies on S*tate v. Lindsay* to support his position. 180 Wn.2d 423, 326 P.3d 125 (2014). In *Lindsay*, our state Supreme Court held that several arguments made by the prosecutor were improper, including comparing reasonable doubt to completing a jigsaw puzzle and crossing the road at a

crosswalk. *Id.* at 434-36. The court quoted favorably from *State v. Johnson,* a Division Two case that had also concluded that a jigsaw puzzle analogy was improper and held it "'trivialized the State's burden, focused on the degree of certainty the jurors needed to act, and implied that the jury had a duty to convict without a reason not to do so.'" *Lindsay*, 180 Wn.2d at 435 (quoting *Johnson*, 158 Wn. App. at 682).

However, the statements of the prosecutor at issue here are distinct from those held to be improper in *Lindsay*. In *Lindsay*, the State discussed reasonable doubt directly and inappropriately quantified and trivialized it by use of an analogy to a recreational pastime. 180 Wn.2d at 436. Here, the prosecutor did not mention the burden of proof, even indirectly. Instead, the statement was intended to urge the jurors to fully engage with its credibility analysis and direct them to consider why Droz had given his testimony in reaching their determination as to his credibility. This is further demonstrated by the surrounding context; the prosecutor explained the evidence from which the jury could find Daugherty more credible than Droz. The State emphasized the content of Daugherty's testimony along with Droz's possible motivations for his own as a means to cast doubt on the latter. This comparison was then followed by a summation of Droz's testimony. Droz fails to articulate why the prosecutor's statements diluted or even implicated the burden of proof such that the trial court abused its discretion when it overruled his objections.

Our appellate courts have held that a prosecutor's statements are improper when they have misstated the law or otherwise undermined the presumption of

innocence. *See, e.g., State v. Emery*, 174 Wn.2d 741, 759-60, 278 P.3d 653 (2012); *State v. Evans*, 163 Wn. App. 635, 643, 260 P.3d 934 (2011); *State v. Venegas*, 155 Wn. App. 507, 523-24, 228 P.3d 813 (2010). In *Emery*, the prosecutor made an impermissible argument that implied the jury needed to provide a reason to find the defendant not guilty. 174 Wn.2d at 759. Our Supreme Court held this was improper "because a jury need do nothing to find the defendant not guilty." *Id.* at 759-60. This is the essence of the presumption of innocence. The prosecutor in *Evans* misstated the law when they had said that "presumptive innocence 'kind of stops once you start deliberating.'" 163 Wn. App. at 643. In *Venegas*, the prosecutor made a similarly improper mischaracterization and said that the "'presumption of innocence . . . erodes each and every time you hear evidence that the defendant is guilty'" until "'that presumption no longer exists.'" 155 Wn. App. at 524.

The challenged statement here simply does not implicate Droz's constitutionally protected presumption of innocence in the same way as in these cases. The State's argument went only to Droz's credibility as a witness, which is a determination that the jury must make in its role as the finder of fact. The comment here does not undermine the presumption; the jury could find some aspects of Droz's testimony not credible but still conclude that the State had not overcome the presumption of innocence because it had failed to prove all elements of the charged offense beyond a reasonable doubt. Droz claims that the statement "was untethered to any evidence presented at trial and instead invited the jury to assess Mr. Droz's credibility solely based on his status as a criminal defendant,

with the presumption of guilt as a starting point." However, this is directly contradicted by the record; the challenged statement was made after the prosecutor referred back to Droz's testimony by stating, "Now you heard from Mr. Droz about this, about what he said happened that day" and before they offered a summary of his testimony. These comments are not improper; they do not contradict the presumption of innocence as in *Emery* and do not misstate the law as in *Evans* and *Venegas*. The prosecutor may not have explicitly recounted the content of Droz's testimony in great detail, but the argument offered after their summary is clearly grounded in what Droz said on the stand, and the prosecutor merely urged the jury to interpret that testimony in a manner that favored its position at trial.

Finally, Droz claims that the State created a "false dichotomy: if the jury believes a testifying officer is truthful, they must convict; but to acquit they must decide the officer has lied." However, when the jury is presented with different versions of the facts, credibility becomes "a central issue" and "there is nothing misleading or unfair in stating the obvious: that if the jury accepts one version of the facts, it must necessarily reject the other." *State v. White*, 76 Wn. App. 811, 825, 888 P.2d 1214 (1995). Further, "[w]e have stated before that, in closing argument, a prosecutor may comment on a witness's veracity as long as a personal opinion is not expressed and as long as the comments are not intended to incite the passion of the jury." *State v. Stith*, 71 Wn. App. 14, 21, 856 P.3d 415 (1993).

Crucial here is the nature of Droz's defense; he contended that he believed he was being robbed and fled from the traffic stop due to that fear. This defense rested on Droz's own perception of the situation, which the jury necessarily had to assess in order to reach its verdict. Thus, even where Daugherty and Droz offered conflicting accounts of events, the jury could have found aspects of both credible and could have acquitted Droz by finding his testimony about his fear reasonable under the circumstances and, therefore, justifying his flight from the scene. This undercuts Droz's claim of a dichotomy, and even if the jury had to choose one set of facts over the other, basing that choice, at least in part, on witness motivation is not improper. Further, the prosecutor did not offer their personal opinion on Droz's credibility but only invited the jury to consider the motivation behind his testimony in reaching its own conclusion on credibility.

Because Droz has not shown that the State misstated or shifted the burden of proof or undermined the presumption of innocence, he has failed to establish that the challenged statements were improper. The disputed comments do not constitute prosecutorial misconduct on these bases, and we need not consider prejudice.

B.      Right To Testify

The other aspect of Droz's prosecutorial misconduct claim is his contention that the State's closing argument was separately improper because it was an "impermissible insinuation that Mr. Droz, like other criminal defendants who choose to testify" do so to "mislead the jury with self-serving testimony."

"In criminal prosecutions the accused shall have the right to appear and defend in person." WASH. CONST. art. 1, § 22. The State cannot draw "adverse inferences" from the accused person's exercise of a right protected by the constitution. *State v. Rupe*, 101 Wn.2d 664, 705, 638 P.2d 751 (1984). Thus, "it is improper for the State to speculate as to why a defendant testified to infer guilt." *State v. Teas*, 10 Wn. App. 2d 111, 123, 447 P.3d 606 (2019). However, "prosecutors may argue inferences from the evidence, including inferences as to why the jury would want to believe one witness over another. The same rule has been applied as to credibility of a defendant." *State v. Copeland*, 130 Wn.2d 244, 290-91, 922 P.2d 1304 (1996) (citation omitted).

Droz's briefing on this portion of his challenge relies heavily on *Teas.* There, the prosecutor's statement was essentially that Teas was aware of the breadth and strength of the evidence against him, and he testified to create his own narrative to "explain away what happened." *Teas,* 10 Wn. App. 2d at 123. The prosecutor explicitly commented on *why* Teas chose to testify and provided a narrative regarding his purported motivation, which also implied that he knew he was guilty but had nonetheless taken the stand for the express purpose of lying to the jurors. This led Division Two of this court to hold it was "improper for the State to speculate as to why a defendant testified [in order] to infer guilt." *Id.* However, *Teas* is easily distinguishable. Here, the prosecutor did not speculate as to any particular reason why Droz chose to testify; any inference in that regard was drawn from the State's invitation for the jury to consider the conflicting testimony in making its determination regarding Droz's credibility. While the State approached the line

drawn in *Teas* by urging the jury to consider Droz's reasons for testifying, this statement was presented in the context of the prosecutor telling the jury why it should find that Droz's testimony was not credible, not to infer guilt. As explained, *supra*, the prosecution is permitted to make arguments as to why the jury should reach a specific credibility determination, so long as they draw on the evidence to do so. After the first challenged statement, the prosecution reviewed the contents of the testimonial evidence that Droz introduced in order to explain to the jury why it should make the credibility determination advocated by the State. Such argument does not constitute prosecutorial misconduct.

Affirmed.

WE CONCUR: